WILLIAM MAXWELL AND OTHERS v. MORGAN AND GUYTON.

That the heirs of the mother's community interest have been advanced by, and have inherited from, the father, to the extent of the value of their inheritance from their mother, is a good defence to a suit by such heirs to recover their mother's community interest in property disposed of by the father after her decease; and see this case for testimony which was held to be sufficient to sustain a verdict for the defendant in such suit.

Appeal from Washington. Tried below before the Hon. R. E. B. Baylor.

The facts are stated in the Opinion.

*White,* for appellants.

*Lewis & Davis,* for appellees.

HEMPHILL, CH. J. This suit is by two daughters (joined by their husbands) of Amelia Stephenson, deceased, wife of James Stephenson, their father, to recover land claimed by them in the community right of their mother, and which after her death was sold by their father, who had also departed this life before the commencement of suit. There is some conflict of evidence, a

Maxwell v. Guyton.

variety of details, and an accumulation of conveyances, which tend to perplexity and confusion. But the main facts are, that the land sued for was purchased by Stephenson in 1835, during the life of his wife Amelia, by exchanging one quarter of his own headright league for this land, which was one quarter of a league of the headright of Isaac Jackson. Shortly afterwards, and before the death of his wife, he exchanged another portion of his headright for one quarter of a league belonging to Benjamin Babbit, situate in what is now known as Grimes county, to which Stephenson removed, and upon which he lived at the time of his death. His wife died in 1838; and one witness testifies that he sold a part of the land in suit in 1839 to one Hughes. No conveyance from this sale was offered in evidence; and the first conveyance of Stephenson to Morgan, one of the defendants, for 554 acres, was dated 5th January, 1847; a second conveyance, for another tract, to the same defendant, for 115½ acres, was dated February 25th, 1849; and a third, for one hundred and ten acres, was dated February 15th, 1851. It was in proof that Morgan went into possession about 1844. The deed to the other defendant, Guyton, was for 289 acres, dated June 10th, 1851. There was no proof of possession by Guyton.

This suit was commenced 5th February, 1856.

Under the plea in defence, that the father of the plaintiffs had conveyed these lands with covenants of warranty, and that the plaintiffs had been advanced and had inherited property from his estate, exceeding in value their interest in the land claimed in this suit, it was shown that Stephenson at the death of his wife owned several tracts of land, one of which he afterwards sold; that he was not an energetic, but a prudent, thrifty man, and accumulated property after the death of his wife; that the land near Groce's Retreat, on which he lived at the time of his death, was worth as much as the tracts now in suit; that a short time before he died he said he was giving to each of his children a negro, or the value of a negro; that he was reserving a tract of land for them near Brazos city, &c. &c.

The main defences were the statute of limitations, and the plea, by way of rebuttal, of assets descended to the plaintiffs from their father.

In relation to the first plea, we are of opinion that all the children and heirs of the mother Amelia were barred, except the plaintiff Civility, the wife of the plaintiff Wm. Maxwell. Up to the time of her marriage in 1841, her father may be regarded as

holding as a tenant in common, in trust for Civility and her bro-
thers and sisters, as the heirs of their mother.    There is some
evidence that he sold a part of the land in 1839; but this is not
sufficiently established to show an ouster or an intention to claim
by adverse possession.   No cause of action, then, had accrued
to Civility at the date of her marriage, nor did any accrue until
the sale to Morgan in 1847, and she was then and since has been
protected by her disability as a married woman.

Elizabeth was over age when she married in 1850, and before
suit she was excluded by the bar of the statute.

On the other ground of assets descended from the father to
the plaintiff, we are of opinion that though the evidence was not
very precise or satisfactory, yet that it was sufficient to justify
the jury in finding for the defendants.    The plaintiffs had the
means of showing definitely what property they had received
from their father's estate.   The defendants furnished, perhaps,
all the evidence within their reach, viz: that he owned at his
death, lands of equal value with that sued for; that he pos-
sessed other property of considerable value, and had the cha-
racter of making and saving money.   There was no direct proof
that he had another wife, though Amelia is sometimes in the evi-
dence mentioned as his first wife; or any other children than
those by his deceased wife Amelia; and the presumption is that
his property descended to the children of Amelia after his death.

He could not by will have deprived them of more than one-fourth
of his estate.   That the plaintiffs, as his heirs, are bound to make
good his warranties to the amount of assets descended to them,
see 15 Tex. R. 519; 4 Kent, 469, 470; 17 Pickering, 14.

We are of opinion that there was no error in the judgment,
and that it be affirmed.

Judgment affirmed.