W. M. CONNER *v.* FRANCES D. A. HUFF ET AL.

1. SUIT BY HEIRS OF MOTHER FOR HER INTEREST IN THE COMMUNITY.—In a suit by the heirs of a deceased wife for her share in the community, against the vendee of the husband, after her death, they cannot recover, if the testimony shows that the plaintiffs received from their father's estate more than their entire interest in the community estate as heirs of their mother.

2. SAME.—It is a defense to a suit by heirs of the mother against a vendee of the surviving husband, to show that the plaintiffs have been paid for their entire interest in the community property of their mother, by receiving an amount equal thereto from the estate of their father.

APPEAL from Titus. Tried below before the Hon. B. F. Estis.

The facts are given in the opinion.

*Turner & Turner,* for appellant.

I. Appellant refers the court to Burleson *v.* Burleson, 28 Tex., 383; Walker *v.* Howard, 34 Tex., 478; Collins *v.* Box, 40 Tex., 190; and draws distinctions between each and the one at bar.

II. The court should have instructed the jury, as requested, to ascertain the value of the interest of the plaintiffs, as heirs of their mother, in the land sued for, and to find for de-

fendants, if the plaintiffs received an amount equal to their said interest as heirs from their father's estate. (Maxwell v. Guyton, 20 Tex., 202; Monroe v. Leigh, 15 Tex., 519.)

III. Heirs are responsible, on ancestor's warranty, to amount of assets descended. (State v. Lewellyn, 25 Tex., 797; Maxwell v. Guyton, 20 Tex., 202; 4 Kent's Comm., 420; 3 Wash., 408.)

IV. Appellees could not take the estate of C. Huff in discharge of supposed demands against his estate. (Sparks v. Spence, 40 Tex., 693; 2 Wms. Ex., 1114; Plunket v. Lewis, 3 Hare's Chan., 323.)

Roberts, Chief Justice.—The plaintiffs claim three-fifths of the 691 acres of land, in right of their mother's community interest, the land having been sold by their father in 1867, after their mother's death in 1860, and they being three out of five children who were her and his heirs.

The defendant Conner claimed the land through a deed of warranty from the father; and alleged facts showing that the amount received by them from their deceased father's estate was equal to their community interest in their mother's estate, without resort to the land.

The verdict and judgment were in favor of the plaintiffs, for three-fifths of one-half of the land, and for costs of suit.

It is contended that the verdict is contrary to the evidence.

As plaintiffs were suing to recover the land to which they were entitled, it would not be proper to include it in the estimate of the value of their interest in the estate of their mother at the time of her death in 1860, upon the issue thus made.

There was shown to have been a growing crop in August, 1860, when she died, which made 48 or 50 bales of cotton, the value of which is not proved, as shown by the evidence in the record. The balance of the community property was estimated at from $2,500 to $3,100. If we take the larger amount, ($3,100,) three-fifths of the one-half of that sum is $930.

It was shown, in proof, that their father's estate, received by them, and equally divided between his five children, was $3,000; and three-fifths of that amount would be $1,800, which is $870 more than their interest in the community property as proved, not including the land, which, at the trial, was proved, and found by the jury, to be worth three dollars per acre, making their interest in it worth $621. In this way, it was shown that they had received from their father's estate $259 more than their interest in the community property of their mother, including the land as thus valued.

It is probable that the value of the 48 or 50 bales of cotton was proved on the trial, though there is no evidence of it in the record here; and if it was shown that it was worth as much as $870, then the amount received from their father's estate would have only been sufficient to pay them for their interest, not including the land. In that event, the verdict of the jury, finding in their favor three-fifths of one-half of the land, might have been sustained.

We cannot assume that the cotton was proved to have been of that or any other particular value, in the absence of proof; and, therefore, we must hold that the verdict is not sustained by the evidence.

This is not because the plaintiffs did not have a legal right to the three-fifths of one-half of the land, but upon the equitable doctrine, that they have been paid for their entire interest in the community property of their mother, including the land, by the amount which they received from the estate of their father, from whom defendant claims title to the land under and through his deed of warranty. (Maxwell *v.* Guyton, 20 Tex., 202.)

In the case just cited, it is said, that it was shown by defendant that the father "owned at his death lands of equal value with that sued for; that he possessed other property of considerable value, and had the character of making and saving money." It was held, that "though the evidence was not

very precise or satisfactory, yet that it was sufficient to jus-
tify the jury in finding for the defendant." There was in
that case a *prima-facie* case made of sufficient assets coming
to their hands, and plaintiffs did not rebut it, although the
means of doing so were reasonably within their power, if
it could have been done.

We do not understand, from this decision, that, as con-
tended for by appellant's counsel, if the plaintiffs had re-
ceived from their father's estate an amount equal to the
value of their interest in the land alone, they would have
been debarred from a recovery of their interest in the land,
although their community interest in other property, retain-
ed and appropriated by their father, might be equal to the
amount which they received from their father's estate. If
their father, in his lifetime, had advanced them an amount
equal to the value of their interest in the community, except
the land, without making a special appropriation of the money
so advanced to be in discharge of the land, such advancement
would not bar their right to recover their interest in the land
from him. He, certainly, could confer no greater right to
his vendee, by his warranty, than he had if living and was
still the part owner of the land.

This view of the law, as applicable to the defense set up
in this case, is presented here, to prevent any misconception,
upon another trial, of the ground upon which the judgment
will be reversed.

The evidence, as it is presented in the record, supports the
defense as pleaded by defendant, which is, in substance, as
we understand it, that the property received by plaintiffs from
their father's estate was equal to, if not greater than, their en-
tire interest in the community estate of their mother, includ-
ing the land.

Had there been proof of the value of the cotton, and it had
been less than sufficient to satisfy their claim upon their
mother's community interest, exclusive of the land, then a
question might have been presented, as to the amount to

which the defendant would have been entitled upon his claim under the warranty, in settling the equities between the parties, and also as to how that should be done; for which we have as yet no precedent in the decisions of our court.

There was an objection, by the defendant, to the proof about the growing crop of cotton, as not in correspondence with the plaintiffs' averments. As there was no value of the cotton proved, and it must be left out of consideration, that has, as to this decision, become immaterial. It would seem that it might have been proper, however, upon proper allegations in the pleading being made, that there should be an abatement in the estimate of the amount of cotton and corn made that year, as the mother died in August, before the crop was gathered; and that therefore plaintiffs should have made their allegations accordingly.

Judgment reversed and cause remanded.

REVERSED AND REMANDED.

SEPARATE OPINION OF JUSTICE MOORE.—I concur in the judgment reversing and remanding this case. I cannot, however, concur in the views expressed in the opinion of the court, "to prevent," as therein said, "any misconception, upon another trial, of the ground upon which the case" is reversed. The view taken by the court, of the rights of the heirs of the deceased wife, in respect to community property in the hands of a purchaser holding by warranty deed from their father, goes, in my opinion, a step further than is required by any of the previous decisions of the court. (Monroe *v.* Leigh, 15 Tex., 519.)

The court, if I understand the opinion, holds that it is not sufficient for the defendant to prove that the heirs of the wife have inherited from their father's estate property equal in value to their interest in the land, but that he must also account for one-half of all community property in possession of

the husband at the death of the wife, and must show that it has not been improperly appropriated by the husband. In other words, unless it is shown that the heirs of the wife have inherited from the husband property equal in value to one-half of the entire community property at their mother's death, they may sue and recover, from whoever may be found in possession of any part of the community property, their interest in it.

If the father converts community property belonging to the heirs of the wife, they must either follow and reclaim the property from the party in whose possession it is found, (when the property is of a character that this can be done,) or hold their father responsible as a wrong-doer. If they elect to pursue the property, they have no claim against their father. On the other hand, if they elect to hold their father responsible for the property, they must enforce their demand against him, or his intestate, as other creditors.

In the absence of proof to the contrary, it is to be presumed that all existing debts, or claims against estates, are settled, before the distribution of the property among the heirs. If so, it would seem to follow that the plaintiffs in this case, if they recover the land for which they bring this suit, should answer, upon their father's warranty, if they have inherited anything from his estate. If they are not estopped from suing their father's warrantee, after participating in the distribution of his estate, surely they should not be allowed to offset the demand of their father's vendee for a breach of his warranty, which they themselves have caused, by the assertion of a claim against their father, which they never made either against him or his estate. To allow this, would, in effect, permit the collection of a claim against an estate without its recognition and allowance by the Probate Court, and, it may be, after it was barred by limitation. Had plaintiffs sued appellant before the partition of their father's estate, the property which they received as heirs would have been applied to the payment of the damages ap-

pellant would have sustained by the breach of warranty. And had appellees presented a claim for their interest in other community property, such claim would have been entitled to no preference over that of appellant. The property of the estate, if inadequate to pay both, would be appropriated *pro rata* between them. But if the view expressed in the opinion of the court is correct, appellees, by first getting the property of the estate as heirs, and afterwards claiming it as creditors, preclude appellant from all chance of getting his *pro rata* part of it. This, in my opinion, is contrary to equity, and should not be allowed. By receiving a portion of their father's estate, they impliedly admit that there is property to which the creditors of their father, if there are any, have a better right than his heirs. When such creditor asks that it be applied to the payment of his debt, the burden is surely upon them to show a valid reason why this should not be done.