CASEY et al. v. TEXARKANA & FT. S. RY. CO.

(Court of Civil Appeals of Texas. Texarkana. Nov. 14, 1912. Rehearing Denied Nov. 28, 1912.)

1. APPEAL AND ERROR (§ 374*)—APPEAL BOND —NECESSITY.

If one brings action in her individual capacity and as administratrix, while she cannot appeal in her individual capacity without giving a bond, she by express provision of Sayles' Ann. Civ. St. 1897, art. 1408, does not have to give bond on appeal in her capacity as administratrix.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2005–2010; Dec. Dig. § 374.*]

2. APPEAL AND ERROR (§ 242*)—REVIEW— CAPACITY TO SUE—WAIVER.

The question of plaintiff, suing as administratrix, not having executed a bond as such, and so not having capacity to sue as such, required by Sayles' Ann. Civ. St. 1897, art. 1265, to be raised by plea verified by affidavit, is waived by defendant, so that it cannot have it considered on appeal; it having failed to have it determined by the trial court, and to assign error thereon.

[Ed. Note.—For other cases, see Appeal and Error. Cent. Dig. §§ 1417–1425; Dec. Dig. § 242.*]

3. MASTER AND SERVANT (§ 286*)—INJURY TO SERVANT—NEGLIGENCE—EVIDENCE.

Whether a switching crew which pushed cars against others to make a coupling, and not succeeding, repeated this, killing a car inspector, who in the meantime had gone between those first on the track to inspect them, was guilty of negligence, in not giving him warning of the second attempt, held under the evidence a question for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1010–1050; Dec. Dig. § 286.*]

4. MASTER AND SERVANT (§ 288*)—INJURY TO SERVANT—ASSUMPTION OF RISK—EVIDENCE.

Whether a car inspector, who, after cars had been pushed against others to make a coupling, went between those first there to inspect them, assumed the risk of the switching crew repeating this without notice to him, the first attempt having been unsuccessful, held under the evidence a question for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1005, 1068–1088; Dec. Dig. § 288.*]

Appeal from District Court, Bowie County; P. A. Turner, Judge.

Action by Mrs. Lillie B. Casey, individually and as administratrix, against the Texarkana & Ft. Smith Railway Company. Judgment for defendant. Plaintiff appeals. Reversed and remanded for new trial.

Between 5 and 6 o'clock on the morning of December 23, 1909, Ben F. Casey, while engaged in the discharge of duties he owed to appellee as one of its car inspectors, suffered injuries resulting in his death a few hours thereafterwards. He left surviving him his wife and several children. On the theory that the injuries were caused by the negligence of other employés of appellee, this suit was brought to recover damages occasioned by his death. At the time Casey was injured, appellee was engaged in interstate commerce, and Casey was employed by it in such commerce; and it is conceded that whether appellee is liable or not for the damages sought to be recovered must be determined with reference to the provisions of the act of Congress of April 22, 1908, usually referred to as the "Federal Employer's Liability Act" (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]). By the terms of that act, in a case like this one is, the right of action for damages recoverable is exclusively in the personal representative of the deceased, for the benefit of his surviving widow and children. It appears from the allegations in the petition that this suit was prosecuted by Mrs. Lillie B. Casey, deceased's widow, in her own right and as temporary administratrix of his estate. She alleged that "on the 17th day of May, 1911, she was duly appointed by the county court of Bowie county, Tex., administratrix of the estate of Ben F. Casey, deceased, without bond, and was granted by said court the power to prosecute any and all suits for the recovery of damages for the death of the said Ben F. Casey," and further alleged as follows: "That up until the 17th day of May, 1911, there had never been any administration upon the estate of the said Ben F. Casey, deceased, and that there had never been any necessity for any administration upon the estate of the said Ben F. Casey, unless such administration is necessary to the prosecution of the suit for damages which are entitled to be recovered for the benefit of his surviving widow and children. Plaintiff alleges that ever since the death of the said Ben F. Casey she has been acting as his personal representative in the capacity of surviving wife until May 17, 1911; that on May 17, 1911, plaintiff, Lillie B. Casey, was duly appointed and duly qualified as temporary administratrix of the estate of said Ben F. Casey by the county judge of Bowie county, Tex., and such temporary administration has been duly continued ever since, and plaintiff now and ever since has been such administratrix; that the said Casey left no will, and the debts, if any, owing by him at the time of his death, did not make an administration upon his estate necessary." In its answer to the suit appellee, among other things, alleged that Mrs. Casey "has no legal capacity to

maintain this suit as the administratrix or personal representative of the estate of Ben F. Casey, deceased; that the alleged appointment of the said Mrs. Lillie B. Casey as such administratrix by the county court of Bowie county was and is void; but that, if mistaken as to this, said appointment has long since expired; and that she is not now either the administratrix of said estate or the personal representative of the said Ben F. Casey, deceased." This plea was verified by the affidavit of one of appellee's counsel, to the effect "that the facts set forth in the above and foregoing plea are true to the best of my knowledge and belief." It does not appear from the record that any effort was made by appellee to have the issue it attempted to make by this plea determined, nor that it was determined, by the court. After the testimony had been heard, the court peremptorily instructed the jury to find for appellee. In accordance with such a finding, a judgment was rendered "that the plaintiff, Mrs. Lillie B. Casey, prosecuting this action in her own right and as personal representative of Ben F. Casey, deceased, that is, as administratrix of the estate of Ben F. Casey, deceased, for the benefit of herself and also for the benefit of * * * the children of said Ben F. Casey, deceased, take nothing by reason of said cause of action alleged, and that the defendant, the Texarkana & Ft. Smith Railway Company, be and is hereby discharged, to go hence without day, and that said defendant do have and recover of and from the plaintiffs in the capacity in which their action is and has been prosecuted by them, as aforesaid, all costs herein incurred." It appears that "the plaintiff, Mrs. Lillie B. Casey et al.," excepted to the judgment and gave notice of an appeal to this court.

Smelser & Vaughan, of Texarkana, for appellant. Glass, Estes, King & Burford, of Texarkana, for appellee.

WILLSON, C. J. (after stating the facts as above). [1, 2] Before determining the appeal on its merits, we will dispose of the motion made by appellee to dismiss it, on the ground, supported by the record, that it is being prosecuted without an appeal bond. So far as it should be construed to be an appeal by Mrs. Casey in her capacity as an individual, the motion should be sustained, for in that capacity she is not entitled, without first making and filing a bond, to prosecute an appeal; but, so far as it is an appeal by her as administratrix, the motion should be overruled, for in that capacity she is entitled, without making a bond, to prosecute an appeal. Sayles' Stat. art. 1408. From the allegations in the petition and recitals in the judgment, set out in the statement, we think it appears that she prosecuted the suit as administratrix and as such is prose-

cuting the appeal. It may be that she had not executed a bond as temporary administratrix, and therefore had not so qualified as to be authorized to act as such in the prosecution of the suit. Whether she had executed a bond or not was a question of fact to be determined in the first instance by the court below. It was not determined there. In the attitude the matter is presented to us, if the question should be said ever to have been made, as it must have been, if at all, by a plea verified by affidavit (Sayles' Stat. art. 1265; Graham v. McCarty, 69 Tex. 323, 7 S. W. 342), we think it should be treated here as having been waived by the failure of appellee to have it determined by the court below and to assign error on it (Grand Lodge v. Stumpf, 24 Tex. Civ. App. 309, 58 S. W. 840; Blum v. Strong, 71 Tex. 329, 6 S. W. 167; Railway Co. v. Harlan, 62 S. W. 972).

The motion will be overruled so far as it applies to the appeal of Mrs. Casey as administratrix, and will be sustained so far as it applies to an appeal by her in her individual capacity.

[3, 4] Referring now to the merits of the appeal, we are of the opinion that the court below erred in peremptorily instructing the jury to find for appellee. The main track in appellee's yards in Texarkana, Tex., extended north and south. A short distance east of and parallel with that track was another, known as "track No. 1," and a short distance west of and parallel with said main track was another, known as "long house track." Both No. 1 and long house tracks were connected by switches to the main track. Between 5 and 6 o'clock, and when it was still dark, on the morning of December 23, 1908, freight train No. 74, from points in Louisiana, destined to points in Arkansas, reached appellee's said yards and was placed on track No. 1. Immediately thereafterwards Casey and an assistant began to inspect the cars constituting that train. On completing the inspection thereof Casey, having in the meantime been informed by Iiams, foreman of the switching crew, that 12 empty coal cars then on long house track were to be carried on as a part of train No. 74, soon to proceed north, in the discharge of his duty went to and commenced inspecting said coal cars. While he was engaged in this work, the switching crew cut the train on track No. 1, carrying 16 cars forming a part of same north on the main track, "kicked" two of the number south on said main track, and then pushed the other fourteen onto long house track, propelling them against the coal cars for the purpose of coupling thereto. The cars failed to couple when the attempt was first made. As a result of the collision, the coal cars rolled south about 15 feet on long house track, where they stopped. The fourteen cars out of train No. 74 were then again shoved south, against the coal cars, colliding with and pushing the latter sev-

eral car lengths further south. Between the time when the collision occurred between the coal cars and the cars out of train No. 74, in the effort first made to effect the coupling, and the time when the second collision occurred, Casey, in the discharge of his duty, had gone between two of the coal cars. As a result of the second collision he was hit by the cars, and knocked down, and suffered the injuries which caused his death. Negligence on the part of Casey contributing to the injury he suffered not being a bar to a right in his administratrix to recover damages for his death, the questions controlling on the issue as to liability on the part of appellee were: (1) Did the testimony make a question for the jury as to whether the switching crew were guilty of negligence or not in shoving the cars out of train No. 74 against the coal cars in the second attempt to make a coupling, without first warning Casey of their intention to do so? (2) Did the testimony make a question for the jury as to whether Casey had assumed the risk of such conduct on the part of the switching crew or not? We think both questions should be answered in the affirmative. There was testimony showing that appellee had promulgated a rule requiring car inspectors, if they did not wish cars they were inspecting to be moved while they were inspecting same, to place blue lights at the ends thereof, and prohibiting other employés from removing lights so placed and from coupling to or moving cars so protected. There also was evidence from which a jury might have found that the rule was not construed by appellee's employés as applying to cars designated, as the coal cars were, as "pick ups," meaning thereby, it seems, cars temporarily placed on a side track to be carried out by incoming trains, and that it was never observed as to such cars. There was testimony authorizing a jury to find that the switching crew knew, or should have known, that Casey was engaged in inspecting the coal cars at the time they pushed the other cars against them, and authorizing a finding that they knew, or should have known, that in inspecting the coal cars Casey might go between them. There was testimony which would have authorized a finding by the jury that it was not customary for the switching crew to propel other cars against cars which they knew to be undergoing inspection. Sturdevant, a member of the switching crew, testified: "As to our custom to couple onto cars in that yard while an inspector was doing the work of inspection, we do not do it if we know the inspector is around it. * * * I never coupled into any cars that had to be inspected to become part of a train, while inspectors were performing the work of inspection. It wasn't customary to my knowledge. * * * It is customary to wait until the inspector had finished the work of inspection

when we were notified by the inspector, or when we knew he was doing the work of inspection. I never knew of a blue light on a car unless an inspector was doing some work on it." While the testimony of Iiams, foreman of the switching crew, and of Bently, a member of that crew, indicated that Casey was advised by Iiams, before he (Casey) began the inspection of the coal cars, that cars out of train No. 74 would be pushed onto long house track against the coal cars, and that the latter would be shoved south thereon fourteen car lengths, Sturdevant testified, with reference to what Iiams said to Casey: "I heard Iiams tell him (Casey) that we were going to throw two bad orders— going to pull those sixteen out and throw two bad orders on the main line and shove the balance of the cut in on top of the coal cars on long house. I can't say whether he said anything about doubling over." From this testimony we think a jury might have found that the switching crew, having shoved "the balance of the cut in on top of the coal cars," should have anticipated that Casey might believe, as his declaration made after he received the injuries, testified to by Bently, that he "thought the boys were through," indicated he did, that the coal cars would not be further moved while he was inspecting them. If a jury might have found that reasonably prudent persons engaged in the work the switching crew were engaged in should have anticipated that Casey might so conclude and go between the coal cars as he did, we see no reason why they might not have further found that, in making the second attempt to couple the cars, the switching crew were guilty of negligence. And on the same testimony we see no reason why a jury might not have found that the risk resulting from their negligence was not assumed by Casey. We think the testimony presented issues for determination by the jury, and that the court erred in refusing to submit the case to them. Therefore the judgment is reversed, and the cause is remanded for a new trial.