GRIFFIN v. WEST FORD ET AL.

(Case No. 4331.)

1. SALE OF COMMUNITY PROPERTY.— The statute (Pasch. Dig., 4648) which gave to the surviving husband power to sell the community estate after the filing of an inventory, on the death of the wife, must be strictly construed; and such filing could not give validity to a sale made after the death of the wife and before compliance by the husband with the terms of the statute.
2. SAME.— If, after the filing of such inventory, the surviving husband is about to waste the common property, though the heirs may apply to the court for protection, their failure to do this can work no forfeiture of their rights to property sold illegally by the father before the inventory was filed.

Argument for the appellant.

3. LIMITATION.— The record of the deed, claim of title thereunder, the payment of taxes, and a resort to land for timber cut by the purchaser thereon, are not sufficient to secure the protection of the five years' statute of limitations.

APPEAL from Tarrant. Tried below before the Hon. A. J. Hood.

Suit was brought by the appellees on the 15th day of June, 1877, for an undivided half of one hundred and seventy acres of land, part of the Solomon Davis six hundred and forty acre survey.

Appellees' ancestors, Wm. and Margaret Thomas (father and mother), on the 17th day of October, 1857, owned this, together with three hundred and twenty acres of the Joel Blackwell survey, and three hundred and twenty acres of the Mahulda Harris survey, all in the same county and adjoining, being eight hundred and ten acres of land, and personal property of the value of $470. Margaret died October 17, 1857, intestate, and appellees claimed as heirs her community interest. Appellant claimed by purchase and deed from D. R. Cameron, of date of the 29th day of August, 1876, who bought and received deed for this land from Wm. Thomas, the 6th day of July, 1863. Wm. Thomas, besides this land, sold to one Wood about one hundred and sixty-eight acres off the Harris and Blackwell tracts in 1860, and held the remaining community land in January, 1870, when he returned an inventory and appraisement of his and Margaret's community estate, as at her death, at which time Thomas held largely more of the estate in value and quality than said Margaret's interest.

Wm. Thomas, after returning the inventory and appraisement, dealt with the estate under the same up to his death, openly and without opposition, in 1876. Appellant's defenses were that appellees had concurred and acquiesced in what Wm. Thomas did about the estate; had taken and conveyed other property that he had received in dealing with the estate as its representative and by their concurrence; that through Wm. Thomas appellees had received enough to satisfy them; that they had ratified Thomas' actions and were estopped; that the inventory and appraisement by relation extended back to the sale and conveyance to D. R. Cameron and gave it full force as a legal title, under pleas not guilty and general denial, and the statute of limitation of five years, and valuable improvements. Appellees recovered one-half the land, judgment for partition, for rents, value of wood sold, etc.

*James H. Field,* for appellant, on limitation cited: Pasch. Dig., art. 4623; Jones *v.* Menard, 1 Tex., 779, 780; Portis and wife *et al. v.* Hill, 3 Tex., 279; Watson *v.* Hopkins, 27 Tex., 642; Cook *v.* Knott,

28 Tex., 89; Word *v.* Drouthett, 44 Tex., 370; Texas Land Co. *v.* Williams, 51 Tex., 62; Ellicott *v.* Pearl, 10 Pet., 442 *et seq.*

On estoppel he cited: Cravens *v.* Booth, 8 Tex., 249; Hunt *v.* Turner, 9 Tex., 389, 390; Monroe *v.* Leigh, 15 Tex., 520, 521; Williams *v.* Chandler, 25 Tex., 11; Burleson *v.* Burleson, 28 Tex., 416; Clay *v.* Clay's Heirs, 35 Tex., 532, 533; Jones *v.* Huff, 36 Tex., 680 *et seq.;* Wright *v.* Doherty, 50 Tex., 41; Ranney *v.* Miller, 51 Tex., 269; Freeman on Co-Ten. and Part., 188, 535.

*Peeler & Maxey,* also for appellant, cited: Pasch. Dig., art. 4623; Thompson *v.* Cragg, 24 Tex., 582; Portis and wife *v.* Hill, 3 Tex., 273; Carlisle *v.* Hart, 27 Tex., 350; McMasters *v.* Mills, 30 Tex., 591.

As to tacking disabilities, they cited: White *v.* Latimer, 12 Tex., 61; French *v.* Strumberg, 52 Tex., 92.

No briefs on file for appellees.

DELANY, J. COM. APP.— In this case no question is made concerning the existence of community debts in 1857, when Margaret Thomas, the mother of the plaintiffs, died. At that time Thomas and wife owned eight hundred and ten acres of land, of which the tract now in controversy was a part. In 1863 the surviving husband sold the tract now in controversy to one Cameron for $800. Cameron conveyed to the defendant in 1876. Before the filing of the inventory the surviving husband also sold another tract of one hundred and sixty-eight acres to one Cowan.

The inventory which was filed in 1870 purports to be an inventory of all the property which Thomas and his wife owned at her death in 1857. The land, eight hundred and ten acres, is valued at $1,520. At the date of the filing, Thomas still held four hundred and seventy-two acres of the land.

In the same year, 1870, but after filing the inventory, Thomas sold the remainder of the land, four hundred and seventy-two acres, to one Hayter, for $2,300. But there is no direct proof that the plaintiffs, his children, ever received anything from him.

Upon this state of facts appellant presents the following proposition, under first assignment of error:

"Where the father, as surviving partner of the conjugal partnership, filed inventory and appraisement under act of August 26, 1856, and at time of filing same has more of the community estate in his hands than enough to meet the claims of the heirs of the deceased spouse, they must look to the remaining property or to the father, and cannot make themselves whole by taking from a purchaser who bought in good faith and for a valuable consideration, from the

father, prior to the filing of the inventory. In such case, and especially if the heirs stood by and allowed the father to dispose of the remaining community, without interposing, as authorized by the fifth section of said act, a court of equity, inasmuch as the father, as surviving partner, is entitled to half the community, will treat his conveyance prior to the inventory as a sale out of his own portion of the estate."

The first bill relates to the following action of the court: "The defendant asked a witness whether the community property remaining in the hands of Thomas at the date of the inventory was not equal to, or greater than, the amount which he had sold before that time. It was objected to because of being a conclusion and immaterial and irrelevant." The objection was sustained.

The third bill of exceptions refers to the action of the court in rejecting testimony that the plaintiffs knew of the sale of the four hundred and seventy-two acres to Hayter.

We do not think it necessary to inquire whether the court erred in the premises or not, because we think it was immaterial. There was ample proof before the jury that the plaintiffs, or some of them, knew of the sale of the four hundred and seventy-two acres to Hayter when it was made; and the relative values of the different parts of the estate were proved by several witnesses.

Let it be admitted, then, for the purpose of testing the position of appellant, that the surviving husband had in his hands, at the date of the inventory, fully one-half of the community property, and that his children were aware of the sale to Hayter when it was made.

Is it to be supposed that the filing of the inventory gave validity to the preceding sale? We think not. The third section of the statute (Pasch. Dig., art. 4648) gives the power of sale *after* the filing, and like all statutory powers it should be strictly construed. The inventory in this case was filed more than twelve years after the death of the wife.

We express no opinion upon the question whether the action of the husband was a legitimate and proper compliance with the statute. It is not presented in such a way as to call for a decision. But if it were so, we think it could affect his action only upon the property still remaining in his hands at the date of the inventory.

After the surviving husband has regularly filed his inventory, if it appear that he is about to waste the property, the heirs may apply to the court and have their rights protected. Pasch. Dig., 4650. But it can hardly be supposed, in this case, that their failure to apply to the court would work a forfeiture of property which

had long before descended to them, and which their father had sold without authority of law.

The cases to which we are referred by counsel (Conner v. Huff, 48 Tex., 364, and Robinson v. McDonald, 11 Tex., 385) certainly do not support appellant's proposition.

This case is not brought within the rule laid down in Yancy v. Batte and Johnson v. Harrison, 48 Tex., 46 and 257, and the numerous cases which have been since decided and in which that rule has been followed.

Under the second, third and fourth assignments, appellant insists that the court should have presented to the jury the question of limitation; and this is the only remaining question which we think requires discussion.

The defendant pleaded the statute of five years. A party who claims title to land under the limitation of five years ought to show that he has complied with the requirements of the statute in every particular. Whitehead v. Foley, 28 Tex., 270. The facts are about as follows: Cameron, the vendor of the defendant, bought in 1863, and placed his deed on record in 1867. From the date of his purchase, his claim to the land was open and notorious. He regularly paid the taxes. He regularly and openly cut timber upon the land — often in large quantities — to supply fencing and building material for his farm, which was some twelve miles distant; his hands were generally encamped upon the land while cutting and appropriating the timber. In 1869 he had a number of men encamped on the place for several months, herding his hogs upon it. The defendant bought in 1876, and immediately took possession and commenced making permanent improvements. He occupied the land until the filing of this suit in 1877. Now, if Cameron had built a house on the land in 1863, and actually lived upon it until the close of the year 1869, this, with his open claim of title, the payment of taxes and the record of his deed, would have availed nothing, because the statute was not running.

From the beginning of the year 1870, when the statute commenced to run, there is nothing shown but the claim of title, the payment of taxes, the record of the deed and the resort to the land for timber, until the defendant took possession. We do not regard this a compliance with the statute, perfect in every particular.

The subject is discussed to some extent, and the authorities cited, in the case of McDow v. Rabb, 56 Tex., 154.

Our opinion is that the judgment should be affirmed.

AFFIRMED.

[Opinion adopted December 11, 1883.]