## No. 2192.

### MRS. S. F. STONE ET AL. *v.* EUGENE ELLIS ET AL.

1. LOCATIVE INTEREST—LAND CERTIFICATE.—The surviving wife has no authority, as such, to make a contract for the location of a land certificate, the community property of herself and of her deceased husband, whereby a portion of the land secured by the certificate is given to the locator, that will bind the interest inherited by the children of the deceased husband.

2. RATIFICATION.—If one whose community interest in land inherited from a deceased father, has been in part illegally bartered away by the mother, who also owned a half interest, shall, upon reaching his majority, sell by metes and bounds less than his half interest, and adopt a divisional line formerly established as a partition by the mother, dividing the land in half, he thereby ratifies the partition line, but his sale of the exact quantity that would have been left him had the sale by his mother been valid, will not estop him from asserting right to the residue to which he was of right entitled.

APPEAL from McLennan.    Tried below before the Hon. B. W. Rimes.

Appellees who were plaintiffs below, alleged in substance that defendants were the heirs at law, children and descendants of Jesse Russell, deceased.    That Jesse Russell acquired a headright for a league and labor of land issued by the Board of Land Commissioners in 1838, by the commissioners of Sabine county; that it had been lost or mislaid; that in 1850, Wm. Russell having died, Mrs. Jane Russell, who had intermarried with H. H. Hill, she being widow of Jesse Russell, and the certificate being community property, administered on the estate of Jesse Russell, and was legally appointed both administratix and guardian of his children, together with her second husband, H. H. Hill; that they entered into a contract in writing with one J. K. Williams to make search for the certificate or make a duplicate, and to locate and obtain a patent thereon, he paying all expenses.    That he did so in 1854, but before the patent issued, he, J. K. Williams, had purchased the interest of Mrs. Jane Hill, and received a conveyance thereof from her and her husband, H. H. Hill; and that they then canceled the original contract made in 1850, and in lieu thereof, so far as her children's

interest were concerned, Jane Hill, joined by her husband, executed to said Williams her contract or bond for title, legally acknowledged, binding themselves, their heirs, and the heirs of Jesse Russell, to make him a title to the one-half of the remaining, or children's one-half of the land, to be located by the certificate, w·^en the same was patented and divided, in consideration of his having hunted up, located and procured a patent for the land. That after said land had been patented, Jane Hill and her husband acting for her minor children and the said Williams for himself, divided the same and gave to Williams the southwest one-half of the league and labor as Jane Hill's half sold to Williams, and the northeast half to the children, and then in 1855 said Jane Hill, H. H. Hill, her husband, and said Williams divided the one-half given to the children, and Jane and H. H. conveyed one thousand acres of this half out of the north or northeast part of one-half of the league and labor before set apart by them to the children to J. K. Williams, leaving the balance of the one-half to the children. The Williams portion was described by metes and bounds; that Williams afterwards sold by metes and bounds to James P. Ellis, and that James P. Ellis sold and conveyed the one thousand acres to plaintiff.

That Williams relied on the representations: that they were administrators and guardians of Jane and H. H. Hill, and did everything in good faith, and that the partition was just and equitable.

That since the partition, the children had taken possession of and sold the parts set aside to them, but set up claim to the one thousand acres set aside to Williams, and slandered partitioner's title; they prayed to remove the cloud. Defendants answered by general and special exceptions, general denial, and that defendants were minors and not bound by reason of the allegations of plaintiff's petition.

*Anderson & Flint,* for appellants.

*Harris & Saunders* and *E. H. Graham,* for appellees: The contract was beneficial to the children, and must be supported. (Burris v. Wideman, 6 Texas, 231; Smith v. Dibrell, 31 Texas, 243; 3 Story on Equity, 1357; Freeman on Cotenancy and Partition, 174, 175, 512, 549.)

The children, while enjoying the benefits of the contract, can

not repudiate it. (Hartwell v. Jackson, 7 Texas, 576; Hunt v. Turner, 9 Texas, 389.)

The presumption is that Mrs. Hill was both administratrix and guardian, and that she acted by authority, and fairly. (Bayne v. Garrett, 17 Texas; 334; Menifee v. Hamilton, 32 Texas, 513; Baker v. Coe, 20 Texas, 429.)

The defendants can not resist the equity of the plaintiff without at least tendering plaintiff a just compensation for Williams's services and expenses in hunting up and locating the certificate, which they have not done. (Ledyard v. Brown, 27 Texas, 393; 1 Storey on Equity, 64.)

COLLARD, JUDGE. It is contended by the appellees that Mrs. Hill, after the death of Jesse Russell, her former husband, leaving her and the four minor children surviving him, had the power to make the contract for the location of the certificate. The charge of the court submits that view of the case as the law, and the jury are told that, if the contract was advantageous to the estate of the minors, was reasonable and fair, that it was valid and would bind their interests in the land. When Jesse Russell died, his estate, being community between himself and wife, vested immediately in his heirs, subject to community debts and administration; the community half of Mrs. Russell passed to her, with absolute right of control and disposition. (Pas. Dig., art. 4642; 24 Texas, 582; 28 Texas, 34; Johnson v. Harrison, 48 Texas, 257; 20 Texas, 294; Veramendi v. Hutchins, 48 Texas, 531.)

Before the contract was made she had administered upon the estate of her deceased husband, and had been discharged, after filing and having her final account approved. The estate was very small and the family were poor, and the estate was soon wound up and her discharge granted. She had intermarried with H. H. Hill. At least, up to the time she married Hill, she had the power, as survivor of the community estate, to pay debts with which it was charged and to relieve it of any prior obligations and incumbrances; but she at no time had the power to sell the community, or to make future contracts with reference to it that could be binding upon any one but herself. The statute itself of 1840 provided that, upon the dissolution of the marriage by death, one-half of the community passed to the survivor and the other half to the child or children of the deceased (Pas. Dig., art. 4642), and the same rule has been often

---

---

announced by our courts of last resort. The survivor can pay out of it antecedent debts and perform antecedent contracts, but there is no law or authority for the survivor to bind the estate by new contracts except as to the share of the survivor. The marital partnership does not continue after the death of one of the spouses; it can be wound up by the survivor, but subject to that the property vests, and the survivor loses all control except as to his or her own part of it.

Appellees say there was an administration then existing upon the Russell estate; that after her formal discharge, the administratrix obtained other orders from the court and was recognized as the administratrix by the court, and that the order of discharge would be presumed to have been set aside; and they cite Bayne v. Garrett, 17 Texas, 330, in support of the doctrine; and they also insist that Mrs. Hill represented herself to be the administratrix and the guardian of the minors. Suppose there had been administration existing in fact, she could not have made a valid contract to bind the interests of the minors in the certificate and the land to be located by it without an order of the court. She was not their guardian at all. Her assertions that she was such guardian could affect no rights but her own, and there is scarcely a probability that Williams was deceived by such assertions. It was his duty to see to it that the minors' interests were bound in some legal way. He was contracting with reference to the rights of these minors, presuming to bind them, and was satisfied with an illegal contract. He now, through his vendees, asks the courts to make the contract good, because he performed it on his part, and because the minors were benefited by it and accepted the fruits of it. Such a position can not be upheld. (Sypert v. McCowen, 28 Texas, 636, and Ross v. Mitchell, 28 Texas, 150.) The minors were guilty of no fraud towards him; they made no contract with him and made no representations to him. He made the contract with one not authorized to make it, except for herself, and located the land, completing his contract with the widow (valid as to her interests) after he had purchased her half of the certificate, and derived such benefit from the location as the contract for Mrs. Hill's interest and his own purchase entitled him to, and in all probability all he ever expected; at all events, it was all the law could have respected.

At the time he purchased her half the original contract was canceled, and she and her husband executed to him a bond for

title for one-half of the land to be located and patented for the minors. This was done seemingly, or it was treated by the parties, as a change in the original contract, necessitated by his purchase of one-half the certificate. This change, however, could not give him any rights against the children for the location better than he had before. There were still no orders of any court authorizing the transaction. He then became a joint owner with them to the extent of his one-half, and he could not in that capacity locate the land so as to bind the minors' half. One heir can not bind the interest of the other heirs by a locative contract. (Keen v. Casey, 22 Texas, 412.) The surviving wife and mother of the minor heirs has no authority to make such contract, except for her own interest, unless she is chosen to be the guardian. (Burris v. Wideman, 6 Texas, 231.) We conclude there was error in the charge of the court in declaring Mrs. Russell had the right to bind the interest of the minors in the contract of location. No contract for a part of the land can arise by implication. The fact that the services are rendered, that they are beneficial and accepted, could not create a contract for a part of the land. (Sypert v. McCowen, 28 Texas, 636.) The only *assumpsit* implied is for reasonable value of services rendered. (Ross v. Mitchell, 28 Texas, 150.)

It is claimed, however, that Mrs. Hill and her husband divided the land with Williams, giving him one particular half under his purchase from Mrs. Hill, and one thousand acres out of the other half falling to the heirs, leaving the rest, one thousand three hundred and two acres (or one thousand four hundred and seventy-six acres), for the children, and the children, after coming of age, ratified the contract and the partition by selling off the one thousand three hundred and two acres. The charge of the court makes this ratification depend, as it should have done, upon the right of Mrs. Hill, in the first place, to make the original contract of location for the heirs. The recognition by the heirs would be sufficient and binding as an acceptance and approval of the partition into two halves, and would bind them to the half set apart to them; but if Williams had no right to any part of such half, their adoption of the partition would only extend to the division into the two halves. The part of the charge complained of would have been correct if the other part upon which it depended had been the law, but that being incorrect renders the concluding part error, for which the judg-

ment should be reversed. Under our view of this case no other errors need be noticed.

The judgment should be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Opinion adopted December 13, 1887.