## McDONNELL et al. v. MILLER et al.
### No. 12770.

Court of Civil Appeals of Texas. Dallas.

Oct. 7, 1939.

A. F. Nossaman and O. H. Woodrow, both of Sherman, for appellants.

Catlett & Kerr, of Oklahoma City, Okl., and Webb & Webb, of Sherman, for appellees.

LOONEY, Justice.

The facts are undisputed and, in substance, are as follows: On September 28, 1926, L. A. Giesert and wife conveyed to E. L. McDonnell the 78 acres of land in controversy (lying in Grayson and Cooke Counties), the whole consideration being the assumption by McDonnell of five notes for $200 each, constituting a valid lien upon the land for unpaid purchase money due by Giesert, arising from a conveyance of the property to him by Roy Moore and wife. On January 10, 1929, McDonnell and wife executed to A. B. Case their promissory note for $1,150 (Case being owner of the five notes), and secured same by a trust deed upon the land, Hamp P. Abney of Sherman being trustee. The notes and trust deed were in renewal and extension of the five notes, including accumulated interest and unpaid taxes upon the land. On October 16, 1929, McDonnell died intestate, without having paid any part of the purchase money, leaving surviving his widow, Katie McDonnell, and ten children. No administration under either of the modes provided by statute was opened on the estate. On December 7, 1929, Katie McDonnell, the widow, paid the whole indebtedness against the land with her separate means, and procured a release of the lien. On October 28, 1933, she was married to A. L. Snow, and, on November 5, 1936, joined by her second husband, conveyed the land to D. F. Miller, one of the defendants, in consideration of $950.

The ten children of Mr. McDonnell, his only heirs at law, brought this suit against Miller and the other parties named, claiming and seeking to recover an undivided half interest in the land, and for partition. The defendants answered by general denials, pleas of not guilty, and set up in detail the facts just recited. The evidence being undisputed, the court directed verdict for the defendants. Judgment followed accordingly, from which plaintiffs appealed.

The contention of plaintiffs, in substance, is that, on the death of Mr. McDonnell, the widow and his children, plaintiffs herein, owned the land as tenants in common, and that the widow could not validly convey a greater interest in the land than an undivided half thereof, and that, her voluntary payment of the community debt and satisfaction of the lien existing against the land, with her separate means, simply gave her an equitable charge upon the half undivided interest of her co-tenants, to the extent of their proportionate part of the amount paid to free the land from the encumbrance.

On the other hand, the defendants justify the action of the court in directing verdict and rendering judgment in their favor on two grounds: First, the land having been purchased during coverture, wholly on credit, and having been paid for wholly with the separate means of Mrs. McDonnell, the widow, she became the unqualified owner of the land, hence the conveyance by her and her second husband passed full title to the defendant Miller; and, second, it is contended that, in any event, Mrs. McDonnell, as survivor, was authorized to sell the property to reimburse the amount she paid out of her separate means to satisfy the debt, and for that reason, the conveyance by her and her second husband passed full title to the defendant Miller.

The doctrine is now so well settled in this State as not to require either discussion or citation of authorities that, to the extent the wife's separate means pay for or enter into the purchase of other property, the latter becomes and is to be treated as her separate property, and this is true although, as in the instant case, the payment was not made until after the death of the husband.

The language used by Judge Robertson, in Leatherwood v. Arnold, 66 Tex. 414–417, 1 S.W. 173, 174, is precisely in point; he said: "The surviving husband is personally liable for community debts. If he has extinguished the community interest in a given item of community property, it is still subject to community debts, because the community debt is also his individual liability. * * * The surviving wife does not owe the community debts. When she lifts the community charge upon the property in her hands, the property is hers as unqualifiedly as if she had bought it with her separate means at an execution

sale of it for the payment of a community debt."

The doctrine announced by Judge Robertson being so precisely applicable to the facts of this case, we can add nothing to its conclusiveness, therefore sustain defendants' contention, to the effect that, as the land was wholly paid for with the separate means of Mrs. McDonnell, it becomes her separate property; hence, her conveyance to Miller, in which she was joined pro forma by her second husband, passed full title to the property.

Adverting to the second ground urged by defendants to sustain the action of the trial court, we think it may be correctly said that the survivor, without administering on the estate of the deceased spouse in either of the modes prescribed by statute, possesses power to sell community property to pay community debts, or to reimburse for sums paid on or in extinguishment of such debts out of his or her separate estate, hence his or her action in so doing would pass full title to the property so disposed of. See Ashe v. Youngst, 65 Tex. 631, 636, and authorities cited; Sanger Bros. v. Moody, 60 Tex. 96.

In the instant case, however, the record discloses that, the conveyance to Miller by the surviving widow of McDonnell was during the existence of her second marriage. Her widowhood having ceased by her second marriage, she was legally incapacitated to exercise the powers of survivor of the community, whether qualified under the statute or not. If acting under the statute, she would have been expressly disqualified to exercise any power of control, management or disposition of community estate during the existence of such second marital relationship. See Art. 3680. The decisions announce the doctrine that, whether she acts under the statute or not, her power to manage, control, or dispose of the community property is interrupted or suspended during her second or subsequent marriage. See Davis v. McCartney, 64 Tex. 584; Auerbach v. Wylie, 84 Tex. 615, 19 S.W. 856; Summerville v. King, 98 Tex. 332, 339, 340, 83 S.W. 680, 682.

In the latter case, Judge Brown announced the status of the law on the subject in the following language: He said: "It is claimed that Mrs. Hanks' authority as surviving wife of Summerville terminated with her marriage to Hanks; hence her deed to the community is void. It is true that upon her marriage she could no longer exercise the powers of surviving wife, whether she had qualified under the statute or not. Davis v. McCartney, 64 Tex. [584] 588; Auerbach v. Wylie, 84 Tex. 615, 19 S.W. 856, 20 S.W. 776. The general authority of a surviving wife, who has not qualified under the statute, arises out of her interest in the community property, and not from her relation to the deceased husband; hence when she becomes the wife of another, and subject to his control, her legal status is so changed that she cannot act without the concurrence of her husband, and it is the policy of the law that her powers over the common property of the former marriage should be suspended during the continuance of the second marriage, but upon the termination of the latter marriage she would be restored to her status as feme sole, and, her interest in the community property being the same, she would possess all of the qualifications which existed before her second marriage."

It is obvious, we think, that, the doctrine announced in the cases just cited, is based upon the legal fiction of a theoretical unity of husband and wife; that is, that after and during marriage, the wife ceases to be a free agent, is incapable of managing, controlling, or disposing of property, but is completely under the domination of her husband and, for that reason alone, her power to dispose of the half interest in the community owned by the heirs of her first husband for the payment of community debts is suspended, as said by Judge Brown, during the continuance of said marriage.

But, in view of legislation enacted subquent to the decisions just cited, we are of opinion that the legal fiction upon which the doctrine was based is now outmoded, and that the wife has been effectually relieved of such disabilities, as the statute now in existence (Art. 4614) confers upon the wife the power of sole management, control and disposition of her property, both real and personal. So, it would seem that, there exists no reason whatever for the further entertainment of the legal fiction as a part of our jurisprudence, nor do we think a logical reason can be found for denying the surviving wife the right to exercise the same powers after a second marriage as she was permitted to exercise before.

However, we do not deem it necessary to decide the point or to predicate our action on that theory, but affirm the judg-

ment below on the idea that the widow of Mr. McDonnell was vested with full title to the land on payment of the purchase money due therefor with her separate means, consequently, her conveyance to Mr. Miller, joined pro forma by her second husband, passed title to the property. Judgment of the court below is therefore affirmed.

Affirmed.