FLORINE ELLA GREBE, A MINOR, BY NEXT FRIEND, LOUIS HAUP-TRIFF V. FIRST STATE BANK OF BISHOP.

No. 7319. Decided March 12, 1941.
Rehearing Overruled April 23, 1941.
(150 S. W., 2d Series, 64.)

228

*Fuchs & Fuchs,* of New Braunfels, and *Kleberg, Eckhardt & Lowe,* of Corpus Christi, for plaintiffs in error.

When the evidence showed that after the death of plaintiff's father, and all community debts had been paid, there remained on deposit in the bank the sum of $3,721.65 which was the community property of the deceased and his surviving wife, and no administration was taken out on his estate and none was necessary, his wife and child (plainitff) being the only heirs, and no guardian having been appointed for said plaintiff, a minor, and the wife not qualifying as community survivor, the bank held the money for the benefit of the joint owners, each one being entitled to one-half of said money. And the bank having full knowledge of the fact that these were community funds and that plaintiff was the minor daughter of deceased and consequently the owner of one-half of such funds, it was error for the trial court to render judgment in favor of the defendants and not for the plaintiff. Wiess v. Goodhue, 98 Texas 274, 83 S. W. 178; Waggoner Bank & Tr. Co. v. Warren, 111 Texas 318, 234 S. W. 387; Gulf W. T. & Pac. Ry. Co. v. Goldman, 87 Texas 567, 29 S. W. 1062.

*Boone, Henderson, Boone & Davis,* of Corpus Christi, for defendants in error.

The relationship between the bank and W. F. Grebe, now deceased, during his life was that of debtor and creditor and Mrs. Grebe, as community survivor, had the legal right to demand and collect from the bank the debt it owed to the community estate of herself and her deceased husband, and the bank having paid such debt to the person legally entitled to it is not liable to the heirs of the said W. F. Grebe, as its debt

has been discharged. Sanger Bros. v. Moody, 60 Texas 96; Walker v. Abercrombie, 61 Texas 69; 7 C. J. 650.

MR. JUSTICE SHARP delivered the opinion of the Court.

Florine Ella Grebe, a minor, brought this suit by next friend against the First State Bank of Bishop, to recover a sum equal to one-half of the deposit in said bank of the community funds of her deceased father and her mother. The cause was tried before the court without the aid of a jury, and judgment was rendered in favor of the bank. The cause was appealed to the Court of Civil Appeals at San Antonio, and the judgment of the trial court was affirmed. 106 S. W. (2d) 382. A writ of error was granted.

We shall designate the parties as plaintiff and defendant, as they were designated in the trial court.

Plaintiff seeks a reversal of the judgments of the trial court and of the Court of Civil Appeals mainly upon two principal grounds. The first ground is as follows: That the funds on deposit in the bank in the name of W. F. Grebe were community property of W. F. Grebe and his surviving wife, and that one-half belonged to plaintiff and the other half belonged to her mother, as the sole surviving heirs of the deceased W. F. Grebe; and that after all the community debts were paid, the bank had no authority to transfer the minor's share of such deposit to her mother, without requiring the mother to qualify as survivor in community, administratrix, or guardian, when it had knowledge of the status of the parties and the nature of the fund.

The trial court filed findings of fact, among which are the following:

(1) That W. F. Grebe died intestate on March 1, 1924, leaving surviving him as his heir at law his wife, Mrs. W. F. Grebe, and a minor child, the plaintiff in this suit, and that no administration of any kind was had on his estate or on the estate of said minor; which facts the officers of the bank knew.

(2) That at the time of his death W. F. Grebe had $3956.47 on deposit with the bank. That on April 2, 1924, Mrs. W. F. Grebe had deposited to her account in the bank the sum of $1242.37, proceeds from the sale of cotton made by her deceased husband before his death, and that the officers of the bank knew the source of said money and knew it to be community property.

(3) That on May 14, 1924, Mrs. Grebe, having paid the funeral expenses and all debts of the deceased from the deposit in the name of W. F. Grebe, transferred, or directed the transfer of, the balance of $3791.65 remaining in the account of W. F. Grebe to her account. All of said money was community property, which fact the bank then knew. The bank also then knew that W. F. Grebe left a minor daughter.

(4) That on June 30, 1924, Mrs. Grebe made a loan of $6000.00 to her brother-in-law, H. W. Grebe, and transferred that amount from her account to him; after which $377.68 remained in her account.

(5) That the officers of the bank knew that the loan was made by Mrs. Grebe to H. W. Grebe, and knew that it was used by H. W. Grebe to buy land, and that the Vice President of the bank took the acknowledgment to the deed to H. W. Grebe. Neither the bank nor any of its officers participated in the loan transaction or in the land purchased, except as above stated.

■ There are three methods provided by statute through which the survivor can take possession of the community estate: (1) By taking out administration under Title 54, Article 3290 et seq., Revised Civil Statutes 1925; (2) by qualifying as survivor in community under Chapter 27, Title 54, Article 3661 et seq., Revised Civil Statutes 1925; and (3) by being appointed guardian of the estate of the minor under Title 69, Article 4102 et seq., Revised Civil Statutes 1925.

Article 2578, Revised Civil Statutes of 1925, provides that upon the dissolution of the marriage relation by death all property belonging to the community estate of the husband and the wife, where there is left a surviving child or children; the survivor shall be entitled to one-half of such property, and the other half shall pass to such child or children. Article 2579 provides that "in every case the community estate passes charged with the debts against it."

The Legislature has enacted many statutes relating to the administration of estates. Among them are Article 3661 et seq., relating to the administration of community property. Article 3663, among other things, provides that where the wife dies, leaving a surviving husband and a child or children, the husband shall have exclusive management, control, and disposition of the community property, the same as during the lifetime of the wife. Subsequent articles provide the method of administering such community estates, and provide that an application shall be made for community administration, for the appointment of

appraisers by the court, for the filing of an inventory and appraisement, et certera. Article 3667 provides that the survivor shall execute a bond. Article 3669 provides that when the order mentioned in Article 3668 has been entered, such survivor, without any further action in the court, shall have the right to control, manage, and dispose of such community property as may seem for the best interest of the estate. Article 3678 confers the same powers upon the surviving wife as are conferred upon the husband, on condition that, should she remarry, her right to manage, control, and dispose of the community property shall cease. In other articles methods are provided for the protection of the estate, and for its disposition and management.

The facts of this case are undisputed. W. F. Grebe died intestate, and left surviving a wife and a minor daughter. He also left a community estate. His wife did not undertake to act as administratrix of the estate under the law, or as guardian of the minor, in transferring the money deposited in the bank by Grebe to her account, and in lending it to her brother-in-law. All debts had been paid, and that amount of cash found by the trial court was in the bank. The officers of the bank were fully acquainted with the history of this account and its nature. They knew that the deceased had left as his heirs his wife and a minor daughter.

It is undisputed that Mrs. Grebe pursued none of the methods provided by law. The assets of the estate were in cash, deposited in the bank, all the debts had been paid, and there was no reason why the survivor should take charge of the money without qualifying under the statutes. The statutes and the decisions of the court have established the rule that upon the death of W. F. Grebe title to one-half of the money on deposit in the bank in his name, being community funds, passed to the minor, subject to the survivor's right of control for the purpose of paying community debts. Belt v. Cetti, 100 Texas 92, 93 S. W. 1000; Johnson v. Harrison, 48 Texas 257; Veramendi v. Hutchins, 48 Texas 531; Griffin v. Ford, 60 Texas 501; Pegues v. Haden, 76 Texas 94, 13 S. W. 171; Stone v. Ellis, 69 Texas 325, 7 S. W. 349; Meyer v. Opperman, 76 Texas 105, 13 S. W. 174; Sims v. Hixon (Civ. App.), 65 S. W. 36, aff. in 65 S. W. 35; McAnulty v. Ellison (Civ. App.), 71 S. W. 670; Hand v. Errington (Com. App.), 242 S. W. 722; Spencer v. Pettit (Com. App.), 2 S. W. (2d) 422; American Freehold Land & Mortgage Co. v. Dulock (Civ. App., writ refused), 67 S. W. 172.

■ The law fixes the individual rights of the survivor and the children in a community estate. Since the community property

descends subject to the debts of the community estate, the survivor is authorized, without qualifying under any statute, to sell and convey such community property for the payment of community debts. Fidelity Union Ins. Co. v. Hutchins, 134 Texas 268, 133 S. W. (2d) 105. We recognize that there is an analogy between the relation of husband and wife with reference to the community property, and that of the members of a commercial partnership towards firm assets, and that by reason of such analogy the survivor of a community, and particularly the surviving husband, on account of the fact that he is personally liable for the community debts, is entitled to possession of the community assets, including the right to collect debts owing thereto, in order that he may pay its outstanding obligations, and thereby protect himself against individual liability. Moody v. Smoot, 78 Texas 119, 14 S. W. 285; Leatherwood v. Arnold, 66 Texas 414, 1 S. W. 173; McDonnell et al v. Miller et al, 133 S. W. (2d) 142 (W. O. J.—Correct Judgment); Speer on Marital Relations, p. 852, sec. 668.

■ Thus it will be seen that one of the objects of the law is to give the survivor full authority to manage and dispose of the community property for the paying of community debts. This carries with it the power to sell such community property, collect debts due the estate, reduce the assets to money, and settle the obligations due by the estate. But when the assets have been liquidated and reduced to cash, and the funds are on deposit in a bank, and there is no dispute between the bank and the survivor as to the liability of the bank, and all debts owing by the community estate have been paid, and the estate has been fully administered,—the survivor, where there are minor children, is not entitled to take possession of the community funds so on deposit in the bank and appropriate the same to his or her own personal use. In other words, after the community estate has been fully administered and all debts paid; the survivor is not entitled to use the funds or community assets for his own private use, but holds same in trust for the benefit of the true owners thereof. Speer on Marital Relations, p. 824, sec. 656.

In the case of Leatherwood v. Arnold, 66 Texas 416, 1 S. W. 174, in discussing the power of a survivor to administer the community estate, this Court said:

"The survivor is a trustee of a unique character. He is the owner in his own right of one-half the trust estate. By qualifying under the statute he acquires over the whole the same

right of management, control, and disposition possessed by the managing partner during the life of the partnership."

It has been repeatedly held that where the assets of the community estate are in cash, and where there are no debts unpaid, and where there has been no administration of the estate, and there is no necessity for any, then upon the death of either the husband or the wife the community estate vests one-half in the survivor and the other half in their children, and that under such circumstances the survivor is not entitled to sell or convey community lands. Wiess et al v. Goodhue et al, 98 Texas 274, 83 S. W. 178; Burnham et al v. Hardy Oil Co. et al, 108 Texas 555, 195 S. W. 1139; Caruth v. Grigsby, 57 Texas 259.

The precise question presented here is whether or not the bank, with knowledge of the facts surrounding the deposit in question, and the nature of the funds, is liable to the minor child for her interest in the community estate of her deceased father and her mother; by reason of the fact that the bank, with knowledge that there were no unpaid community debts, and that the surviving wife had not qualified under the law as guardian of the minor, or as administratrix of the estate of her deceased husband, had transferred this deposit to her account, and permitted her to check the entire amount out of the bank for the purpose of making a loan to H. W. Grebe.

■ We recognize that as a general proposition the relation between a bank and its depositor is that of debtor and creditor. Stone Fort Nat'l Bank v. Forbess, 126 Texas 568, 91 S. W. (2d) 674. Banks are creatures of the law, and occupy an important position in the business affairs of this country, and much latitude is allowed them in cashing checks drawn on the accounts of their depositors. This is necessarily so, in order not to restrict or hamper their legitimate operations. See Wichita Royalty Co. v. City Nat'l Bank, 127 Texas 158, 89 S. W. (2d) 394, Id. 93 S. W. (2d) 143; Quanah, Acme & Pacific Ry. Co. v. Wichita State Bank & Trust Co., 127 Texas 407, 93 S. W. (2d) 701, 106 A. L. R. 821.

■ Banks are authorized by law to accept deposits, and they are generally used for receiving deposits of various funds for security and safekeeping. Banks accept accounts like the one in controversy with full knowledge that conditions may arise under the law which will call upon them to exercise their judgment to protect the rights of persons interested in such accounts. The officials of the bank in this instance had full knowledge of the history of this account. They knew that the original depositor was dead, and that he left surviving him a

wife and a minor daughter. They also knew that this was community property, that all debts had been paid, and that no administration on the estate had been taken out as provided for by law. They could have retained the minor's share of the money on deposit, or could have required the mother to comply with the law before transferring to her all the money in such deposit. This they did not do. The bank was solvent, and there was no necessity to withdraw from the bank the minor's share of such deposit. No contention is made that the bank was insolvent, or that whatever was done by Mrs. Grebe and the officers of the bank was done to better secure and protect the minor's interest in such funds. Nor is the contention made that the doctrine of innocent purchaser is involved in this case. The prior lien retained on the land on which Mrs. Grebe retained a second lien was foreclosed, and whatever claim the minor had in such land was lost.

Under modern practice it is generally recognized that every prudent administrator, when the assets of the estate have been liquidated, deposits same in a bank. In the case at bar the assets consisted of cash on deposit in a bank. As stated, all debts owing by the community estate had been paid. The bank, with full knowledge of all these facts, and with full knowledge that the funds on deposit belonged in part to the minor daughter, knowingly permitted the surviving widow to check them out of the bank and appropriate them to her own personal use and benefit. Under these facts, we think the bank was liable in permitting the funds to be so withdrawn and used by the surviving wife.

■ Plaintiff's second principal ground is as follows: That after all the community debts had been paid, and after all the community funds belonging to the deceased and his wife had been placed in the bank to the credit of the surviving wife, with full knowledge on the part of the officials of the bank of the nature of the account and of the minor's interest therein, such deposit became a trust fund; and that when the bank permitted this fund to be drawn on for an unauthorized purpose, of which it had full knowledge, thereby permitting the trustee to breach her trust, it became liable to the plaintiff for her portion of such fund.

The facts are undisputed that the officials of the bank had full knowledge of the deposit in controversy and the nature of such deposit, and that it was community property, and that the deceased left surviving him his wife and minor daughter. They also knew that all debts had been paid, and that no administration had been taken out on the estate. The trial court further

found that the officers of the bank had full knowledge of the loan made by Mrs. Grebe to H. W. Grebe out of the community funds on deposit. In U. S. Fidelity & Guaranty Co. v. Adoue & Lobit, 104 Texas 379, 137 S. W. 648, 653, 138 S. W. 383, 37 L. R. A. (N. S.) 409, Ann. Cas. 1914B 667, this Court said: "If the bank has notice or knowledge that a breach of the trust is being committed by an improper withdrawal of funds, or if it participates in the profits or fruits of the fraud, then it will be undoubtedly liable."

That the foregoing rule is now settled in this State we think is unquestioned. That rule has been recently reiterated and re-affirmed by this Court in the following cases: Wichita Royalty Co. et al v. City Nat'l Bank of Wichita Falls et al, 127 Texas 158, 89 S. W. (2d) 394, 93 S. W. (2d) 143; Quanah, Acme & Pacific Ry. Co. v. Wichita State Bank & Trust Co., 127 Texas 407, 93 S. W. (2d) 701, 106 A. L. R. 821. It therefore follows, in view of the undisputed facts in this case, that after all the community debts had been paid, one-half of the community funds belonged to the plaintiff, and that plaintiff is entitled to recover from the bank one-half of all community funds of the deceased and his wife that had been placed to the credit of the mother in such bank with full knowledge on the part of the officials of the bank of the nature of the account and the minor's interest therein.

Therefore the judgments of the Court of Civil Appeals and of the trial court are reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

Opinion delivered March 12, 1941.

MR. JUSTICE CRITZ, dissenting.

As I interpret the opinion of the majority, it holds:

(a) That where a husband during coverture deposits funds in a bank in this State in an ordinary checking account, the surviving wife, after the husband's death, has no legal right or power to collect from such bank more than her community interest (one-half) of such deposit, except to pay community debts.

(b) That the same rule applies to the surviving husband after the death of the wife.

(c) That neither the surviving husband nor the surviving wife has the right to collect debts owing to the community

estate, except to pay community obligations owing by the community estate. (I will refer to this matter later.)

(d) That the surviving husband has some right or power in regard to the possession of the community assets and the collection of debts owing to the community estate that are particular to him.

I am of the opinion that the rights and powers of the surviving husband and of the surviving wife are the same in regard to the right of possession of the community estate, and the right to collect debts owing to the same, except the surviving wife loses her rights during any subsequent coverture. Article 3678, R. C. S. 1925. I believe that this question has been fully settled by our decisions, and by the above statute.

I think it is settled by the decisions of this State that the survivor in community, whether husband or wife, has the power, in the absence of any legal proceedings regarding the community estate, to reduce such estate to possession and to sue for, demand, and collect the claims, choses in action, and debts due and owing to such estate,—all regardless of debts due by the estate. To my mind, no rule of law has heretofore been better settled than this. Gulf, W. T. & P. Ry. Co. v. Goldman, 87 Texas 567, 29 S. W. 1062; San Antonio & A. P. Ry. Co. v. Evans, 198 S. W. 674; Western Union Telegraph Co. v. Kerr (Civ. App.), 23 S. W. 564; Evans v. Evans (Civ. App.), 249 S. W. 1097. I also here refer to the authorities cited by the Court of Civil Appeals to sustain its ruling, which is to the same effect that I am contending for here.

I think it is settled as the law of this State,—in fact, I think it is the law generally in this Country—that when a person deposits money in a bank in an ordinary checking account, merely the relation of debtor and creditor is created. It is elementary that the title to the money deposited passes to the bank. The bank makes no contract, express or implied, to return the money deposited. In law, the bank merely obligates itself to repay the amount deposited on the written check or order of the depositor. In the very nature of the transaction only a debt due on demand is created. Stone Fort National Bank v. Forbess, 126 Texas. 568, 91 S. W. (2d) 674; Duncan v. Magette, 25 Texas 246, 248; Baker v. Kenedy, 53 Texas 200; Hewett v. First National Bank, 113 Texas 100, 252 S. W. 161. These authorities are but a few of the many that sustain the above rule. I think there are no authorities to the contrary,—in fact, I do not understand the majority opinion even questions the above rule.

If an ordinary checking account in a bank in this State is merely a debt of the bank to the depositor, the right or power of the survivor in community to collect the same must turn on the right or power of such survivor to collect a debt or obligation due and owing the community estate. This certainly ought to be the rule, because there could be no good reason given for placing bank debts in a different class from debts of any other corporation, or, for that matter, any other person, natural or artificial.

The opinion of the majority states: "We recognize that there is an analogy between the relation of husband and wife with reference to the community property, and that of the members of a commercial partnership towards firm assets, and that by reason of such analogy the survivor of a community, and particularly the surviving husband, on account of the fact that he is personally liable for the community debts, is entitled to possession of the community assets, including the right to collect debts owing thereto, in order that he may pay its outstanding obligations, and thereby protect himself against individual liability." It is the portion of this opinion just quoted that I construe as holding that in some way the surviving husband has some particular powers that the surviving wife does not have. As I understand it, there was a time in this State when the surviving husband possessed powers that the surviving wife did not possess. This is not the rule now, unless the majority opinion makes it such. Also the above is the portion of the opinion that I construe as holding that the power to collect debts depends on the fact that the community owes debts.

I regard the opinion of the majority of very far-reaching consequences. From now on no bank can pay to a survivor in community any part of a community bank account without running the risk of having to pay again to the heirs. This must be true, because in the very nature of the transaction the bank will assume the burden of proving that it was necessary to pay such account to the survivor in order for him to pay community debts. Under the rule announced by the majority no debtor of the community can afford to pay his debt to the survivor for the same reason. Most bank accounts are small, and the rule announced by the majority opinion will either result in freezing them in the banks or disipating them in probate proceedings. The same is true as to debts due the community.

As above indicated, I dissent from the majority opinion.

Opinion delivered March 12, 1941.