ESTATE OF Roberta L. BAILEY, Deceased, and Joseph W. Bailey, III, Independent Executor, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 83–4114.

United States Court of Appeals, Fifth Circuit.

Sept. 17, 1984.

Brown, Maroney, Rose, Barber & Dye, E. Richard Criss, Jr., Austin, Tex., for petitioner.

Lisa A. Prager, Asst. Atty. Gen., Glenn L. Archer, Jr., Jonathan S. Cohen, Michael L. Paup, Chief, Appellate, Sec., Tax Div.,

---

Dept. of Justice, Washington, D.C., for respondent.

Before CLARK, Chief Judge, BROWN and HIGGINBOTHAM, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

In this appeal from a decision of the United States Tax Court, 79 T.C. 441, the estate of Roberta L. Bailey, as represented by her son Joseph W. Bailey, III, claims the Tax Court erred in including in Mrs. Bailey's estate property that should have passed to Joseph III upon the death of his father in 1943. Under Texas law, upon the father's death, one-half of the community property should have passed to Joseph III. We conclude that Texas courts would have imposed a constructive trust upon those funds during the life of Mrs. Bailey.[1] Thus, at least some portion of the disputed funds were improperly included in her estate for estate tax purposes.

*Facts and Procedural Background*

Roberta L. Bailey and Joseph W. Bailey, Jr. were married in 1924 and Joseph Bailey, III, their only child, was born in 1926. Mrs. Bailey was apparently a very wealthy woman, who, upon her husband's death in 1943, held separate property in stocks and bonds valued at over $300,000. Mr. Bailey held no separate property at his death. Mrs. Bailey eventually settled a dispute[2] over Mr. Bailey's estate with the Internal Revenue Service (IRS) conceding that Mr.

Bailey's net interest in the community estate was $73,396.68 at the time of his death. Since Mr. Bailey died intestate, under the Texas law effective at the time of his father's death, Joseph III was entitled to his father's share of the community property. Tex.Rev.Civ.Stat. art. 2578 (1925) (repealed effective January 1, 1956).

Following Mr. Bailey's death, Mrs. Bailey chose to administer his estate herself as unqualified community survivor. She recorded an Affidavit of Heirship in 1949, stating that Mr. Bailey left no will and that Joseph III was his only child. There is no evidence that Mrs. Bailey set up any trust or separate account for Joseph III's benefit, or that she ever discussed with her son the disposition of his father's estate.

Joseph III was seventeen years old when his father died. He was then living with his parents while finishing high school after spending the previous six years away from home attending private boarding schools. In June of 1944, after his father's death, Joseph III entered the armed services and spent two years in the Pacific theater during World War II. In August of 1946 he returned to live with his mother and her then husband, William McKinney. Joseph III attended Southern Methodist University from 1946–49, supported partially by the GI Bill and partially by his mother. In 1949, when he was 23 years old, the Bailey family home was sold. Joseph III joined his mother and stepfather in signing the deed. Under Texas law, he owned his father's one-half interest in this community

---

1. Our decision is supported by the Texas Supreme Court's recent restatement of the constructive trust remedy in *Ginther v. Taub*, 675 S.W.2d 724, 27 Tex.Sup.Ct.J. 488 (1984). There the Supreme Court reaffirmed its holding in *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex.1974) saying "that constructive trusts, being remedial in character, have the very broad function of redressing wrong or unjust enrichment in keeping with the basic principles of equity and justice. In *Meadows* we further stated that a transaction may, depending on the circumstances, provide the basis for a constructive trust where one party to that transaction holds funds which in equity and good conscience should be

possessed by another." *Ginther*, 675 S.W.2d at 728, 27 Tex.Sup.Ct.J. at 491.

2. The dispute, which was not settled until November of 1946, centered around Mrs. Bailey's claim that she and her husband had agreed that all dividends she received during their marriage from stocks she owned prior to her marriage would be her separate property; thus, any property purchased with those dividends would have remained her separate property. The dispute, which apparently lasted over three years, was eventually settled by including in the community estate at least a portion of the property acquired with the dividends.

property asset, yet he received none of the proceeds from the sale.

Between 1959 and 1961, Mrs. Bailey transferred cash, stock and other property worth $929,504.24 to Joseph III. This figure is undisputed and is verified by federal gift tax returns filed by Mrs. Bailey during those years. Some of these gifts represented forgiveness of loans made by Mrs. Bailey to assist Joseph III in his various business ventures. Other than these gifts, Mrs. Bailey did not participate in Joseph III's business affairs, nor did Joseph III involve himself in Mrs. Bailey's affairs.

Roberta Bailey died in 1976, leaving her entire estate to her son Joseph III with the exception of two specific bequests of jewelry worth approximately $3,600. Joseph III inherited over $1.5 million. Joseph III claims that he first became aware that he had been legally entitled to inherit his father's estate when, as administrator of Mrs. Bailey's estate, he discovered certain papers in her safety deposit box. Joseph III, as administrator of his mother's estate, therefore deducted $765,282.50 from the estate before calculating the estate tax due. He claimed that this figure represented the 1976 value of the properties he should have inherited from his father in 1943, and argued that Texas courts would have imposed a constructive trust over his father's estate. He claimed that his mother had breached her fiduciary duty to him by (i) failing to account for his father's estate, (ii) failing to inform him of his rights therein, and (iii) treating all the estate property as her own.

The Commissioner of Internal Revenue refused to credit Joseph III's constructive trust theory and assessed a deficiency of $293,499.81. Joseph III sued in the Tax Court for reassessment of the deficiency. After a trial, the Tax Court held that no constructive trust was formed because Jo-

seph III could not show that he had been injured by his mother's "technical violation of her legal duty as community survivor." The Tax Court focused on the fact that his mother's *inter vivos* transfers to Joseph III exceeded 12 times the 1943 value of his father's estate and that she left him nearly all her property at her death. The Tax Court thus held that Mrs. Bailey's *inter vivos* gifts to her son were intended to settle any claim Joseph III had on his father's estate, regardless of the lack of a formal accounting and regardless of the fact that she had filed gift tax returns for each of those gifts. In essence, the Tax Court reasoned that Mrs. Bailey had not been unjustly enriched by her actions, and, more importantly that Joseph III had not suffered sufficient inequity to invoke an equitable remedy. We do not agree.

### Claims against the Estate

Section 2053(a)(3) of the Internal Revenue Code, 26 U.S.C. § 2053(a)(3), permits a deduction from the value of a decedent's gross estate for such claims against it "as are allowable by the laws of the jurisdiction ... under which the estate is being administered." Thus, if Joseph III could prove a valid claim against his mother's estate under the laws of Texas, as administrator he may deduct the amount of the claim[3] from the estate before computation of the tax due. Proof of a claim under Texas law means that Mrs. Bailey was never entitled to make testamentary disposition of the funds.

The issue before us, then, is whether the Tax Court erred in finding that Joseph III was not entitled to the equitable remedy of constructive trust under Texas law. In reviewing the Tax Court's decision, we recognize that we may reverse only those findings of fact that are clearly erroneous. *Allen v. Commissioner of Internal Reve-*

---

**3.** Joseph III contends that the present value of his father's estate, to which he was entitled under Texas law, is $765,282.50. Accordingly, he claims that amount could not become part of his mother's estate. In the Tax Court, the IRS disputed not only his theory of exclusion, but also the amount. The IRS contended that the

present value would only equal either $212,809 or $162,785. Since the Tax Court concluded that Joseph III's claim lacked merit, it did not reach the calculation of the present-day value through tracing of the items initially present in Mr. Bailey's estate. Therefore the valuation of Mr. Bailey's estate is not properly before us.

*nue,* 514 F.2d 908 (5th Cir.1975); *Brown's Estate v. Commissioner of Internal Revenue,* 425 F.2d 1406 (5th Cir.1970). However, insofar as the Tax Court may have improperly construed the laws of Texas, our review is not so limited. *First Charter Financial Corp. v. United States,* 669 F.2d 1342 (9th Cir.1982).

### Texas Law: Constructive Trusts

■ We have recently had occasion to explore in detail the requirements for the imposition of a constructive trust under Texas law. In *Harris v. Sentry Title Co.,* 715 F.2d 941 (5th Cir.1983), *mandate recalled on other grounds,* 727 F.2d 1368 (5th Cir.1984), we held that to establish a constructive trust, the plaintiff must first show, by a preponderance of the evidence, "that the parties had a long-standing fiduciary or confidential, trusting relationship unrelated to the subject transaction." *Id.* at 948, *citing Panama-Williams, Inc. v. Lipsey,* 576 S.W.2d 426, 432 (Tex.Civ.App. —Houston (1st Dist.) 1978), *aff'd after remand,* 611 S.W.2d 917 (Tex.Civ.App.— Houston (14th Dist.) 1981, writ ref'd n.r.e.); *Tyra v. Woodson,* 495 S.W.2d 211 (Tex. 1973). There can be little doubt that the mother-son relationship here would satisfy this first criteria.

Beyond the confidential or trusting aspects inherent in the parent-child relationship, we think it clear that when Mrs. Bailey undertook to administer her husband's estate on an unqualified, informal basis,[4] without any separate accounting or formal trusteeship for the benefit of Joseph III, she stood in a fiduciary relationship to her son. We cannot say that Mrs. Bailey's gifts to her son between 1947 and 1961

terminated this fiduciary relationship. As a result, we think the Tax Court's finding to the contrary is clearly erroneous, especially in view of the undisputed evidence that Mrs. Bailey filed a federal gift tax return for each of these gifts. This, we think, is indisputable evidence that she considered the gift funds to be her own property, not a fiduciary's transfer of funds beneficially owned by her son.

The second requirement for imposition of a constructive trust set forth in *Harris* is that "the court's failure to intervene must cause unjust enrichment." *Harris, supra,* 715 F.2d at 949. See also *Baxter v. Williams,* 544 S.W.2d 192, 195 (Tex.Civ.App. 1976) (writ ref'd n.r.e.). In *Harris* we held that the concept of unjust enrichment recognized "situations where one party has received benefit at the expense of an innocent other person." *Harris, supra,* at 949. At first blush this element seems troublesome. Indeed, it is difficult from our present vantage point—after Mrs. Bailey's death and subsequent transfer of her entire estate to her son—to perceive that Mrs. Bailey was unjustly enriched or that Joseph III presently is suffering from his mother's actions in the 1940s. We think it was precisely this view of the case that led the Tax Court to find no unjust enrichment. Nonetheless, we hold this view erroneous under the applicable Texas law.

Although Joseph III unquestionably received all his mother had to give, we cannot be misled by that fact to conclude that he was never in the past injured, nor can we conclude that Mrs. Bailey was not unjustly enriched during her life by the retention and investment[5] of the whole of Mr. Bail-

4. As appellant points out, when Joseph Bailey, Jr. died intestate, the Revised Civil Statutes of Texas provided that Mrs. Bailey as the community survivor could take possession of the community estate in three ways. First, she could take out formal administration of the estate under Article 3290, *et seq.;* second, she could qualify as community survivor pursuant to Article 3661, *et seq.;* and third, she could be appointed guardian of the estate of Joseph III, then a minor, as provided in Article 4102, *et seq.* A 1946 letter from Mrs. Bailey's attorney to her banker indicates that Mrs. Bailey clearly was

aware that her son was entitled to his father's one-half of the community property.

5. Most of the individual assets of Mr. Bailey's estate were liquidated and reinvested by Mrs. Bailey during her life and thus were no longer present in her estate. Mr. Bailey's estate included, however, certain stocks that were retained by Mrs. Bailey and which multiplied and increased in value during her life. The present-day value of Mr. Bailey's estate is, of course, not before us in this appeal.

ey's estate. We cannot say that Joseph III's receipt of a considerable sum of money late in life—or earlier, at the sole discretion of his mother—necessarily compensates him for the loss of the unencumbered use of his father's estate at the time he became entitled to possess it. Although we do not dispute Mrs. Bailey's abundant generosity toward her son, we simply cannot conclude under these facts that whatever sum is attributable to Joseph Bailey Jr.'s share of the Baileys' community property at his death was properly included within Mrs. Bailey's estate.

The IRS argues, however, that Texas courts would not have imposed a constructive trust in this case because Mrs. Bailey did not obtain—or retain—the property in question through any type of fraud. This argument simply overlooks the fact that Mrs. Bailey treated her son's inheritance as her own property and used it for her own purposes for thirty years. We cannot ignore that Texas courts impose a constructive trust upon the decedent's portion of the community funds after payment of the community debts.[6] These cases recognize that at least constructive fraud is inherent in the act of retaining and using property to which another person is legally entitled in violation of a fiduciary duty. *See Grebe v. First State Bank of Bishop*, 136 Tex. 226, 150 S.W.2d 64 (1941). *See also Batmanis v. Batmanis*, 600 S.W.2d 887 (Tex. Civ.App.1980) (14th Dist.—Houston) (recognizing, though not discussing, constructive trust in similar situation).

We therefore conclude that the Tax Court erred in finding that Texas courts would decline to impose a constructive trust in this case. We reverse on that basis, finding that Joseph III's eventual receipt of nearly all his mother's estate cannot justify the Tax Court's failure to

impose such a remedy. Similarly, we find that the gift tax returns filed by Mrs. Bailey preclude us from finding that the *inter vivos* gifts from mother to son extinguished her duty to transfer to him the whole of his father's portion of the community estate when he became entitled to it. We remand, however, for purposes of determining the pertinent present value of Mr. Bailey's estate. We also remand for determination of whether Joseph III's claim against his mother's estate would be barred by the Texas four-year statute of limitations and the attendant discovery interpretations afforded it under Texas law.[7]

REVERSED IN PART AND REMANDED.

---

**6.** It cannot be disputed that the surviving spouse has "full authority to manage and dispose of the community property for the paying of community debts." *Grebe v. First State Bank of Bishop*, 136 Tex. 226, 150 S.W.2d 64, 67 (1941). The surviving spouse may sell the community assets, pay the community debts and any other obligations of the estate, but once the debts are paid and the assets are reduced to cash, "the survivor

is not entitled to use the funds or community assets for his own private use, but holds same in trust for the benefit of the true owners thereof." *Id.*

**7.** The Tax Court did not reach this issue, although the Commissioner resolved it against Joseph III.