## CLAIBORNE ARRINGTON v. SEBRON G. SNEED.

The relation of attorney and client is confidential and implies a mutual trust, confidence and good will, and where such mutual trust, confidence and good will is destroyed, by the act of the attorney, the client is justified in terminating the relation, by notice to the attorney to that effect.

A contract between attorney and client, the consideration of which was such advice to a party as was calculated to enable, if not to induce him, to elude the process of the law, and such advice to the officer, entrusted with the execution of process, as was calculated to induce him to violate his duty, cannot be sustained.

Whatever (legal) services were rendered were mixed with others, so contrary to public policy, that the law will not imply a promise to pay for them.

Where there was a verdict and judgment for the plaintiff below, but it manifestly appeared that the plaintiff's cause of action was not such as the law would permit a recovery upon, the Court reversed the judgment and dismissed the suit.

Appeal from Travis. Tried below before the Hon. Thomas H. DuVal.

Suit, July 25, 1854, by appellee, against appellant. Petition as follows :

That heretofore, to-wit : on the —— day of May, A. D., 1854, the said Claiborne Arrington retained the services of your petitioner, as an attorney at law, to defend him, the said Arrington, and his son Joseph Arrington, against an indictment, preferred against each of them by the grand jury of the county of Caldwell, at the Spring Term of the District Court of said county, A. D., 1854, for the crime of murder.

Your petitioner further states that being so retained, the said defendant in consideration thereof, became indebted to your petitioner in the sum of five hundred dollars, which sum is due your petitioner from the said defendant, but which he has failed to pay.

Plaintiff further states that the said Claiborne Arrington

secretes himself so that the ordinary process of law cannot be served upon him, and he is informed and believes, and therefore states the fact to be, that the said defendant is about to remove his property beyond this State, and that thereby your petitioner will probably lose his said debt of $500.

The premises considered, your petitioner prays that an original attachment may issue to be levied on the property of the said defendant, and that on the final hearing hereof, he may have judgment against the said Arrington, for the said sum of $500, and as in duty bound, &c. Sworn to.

Bond filed and attachment issued same day ; returned levied. Property replevied. Answer, November 1, 1854, denying the fact of retainer, and alleging that as soon as defendant heard that plaintiff considered himself retained by him, he gave him notice to the contrary in writing ; for further answer, denial of all and singular, &c.

November 15, 1854, amended petition filed, the first paragraph of which was the same as that of the original, and balance as follows :

And your petitioner being so retained did, on the day and year first aforesaid, counsel and advise the said Claiborne Arrington, in reference to said prosecution, and has since then and before the institution of this suit, been at great labor and trouble in investigating the law, applicable to the defence in the said prosecution, and in preparing the defence of said cause for trial, all of which was and is reasonably worth the sum of five hundred dollars, which sum the said Claiborn Arrington is justly indebted to your petitioner, and which the said Claiborne Arrington has failed and refused to pay.

Petitioner further states that on the 4th day of September, A. D., 1854, the said Claiborne Arrington voluntarily disclaimed and denied having retained and engaged your petitioner to defend against said prosecutions, and released your petitioner from all obligation and responsibility connected with said prosecutions. Prayer accordingly.

Amendment of the answer, denying the allegations of the amended petition, except as to the notice to plaintiff that he was not retained by defendant ; allegations also of new matter, covering the evidence afterwards introduced by defendant at the trial.

The evidence introduced by the plaintiff at the trial, was as follows :

W. S. Oldham, witness for plaintiff said that he, and the plaintiff and the defendant and his son Joseph, had an interview in the Spring of 1854, and that said defendant told him, witness, and said Sneed, that he wanted them to defend him and his son Joseph against the indictment which had been found against them in Caldwell county, for murder ; that he hoped they would be merciful, or words to that effect ; that witness and said plaintiff thereupon advised said defendant how to proceed to procure the testimony for his defence against said charge of murder ; that the interview took place on the south side of the river, near Judge Sneed's rancho ; that witness, plaintiff, defendant, and his son Joseph, came on to Austin together, with the understanding that said plaintiff should see George Scott, Sheriff of Travis county, and get him to agree not to serve the capias on the said defendant and his son Joseph, until just before Court at Lockhart ; that witness has a suit pending against defendant for the same amount as the one now on trial, founded on said contract to defend said defendant and son ; that witness was not at home when said suits were instituted against said defendant, and that he regretted at any time that they had been brought, but that he told his partner that, inasmuch as defendant had acted as he had, the suit had as well go on.

G. W. Paschal, witness for plaintiff, stated that he had never done much criminal practice in Texas, but that the fee for defending in murder cases, ranged, he thought, from about $250 to $1000 ; that he was present in Caldwell county when defendant and his son Joseph were tried on said charge of murder ;

that he did not consider their case a bad one, and that he would consider $250 a fair fee for defending in that case. Witness said that, if an attorney should be dismissed without any just cause, he ought to have full fee, but that he could not imagine a case where an attorney could make it his duty to procure the arrest of his client against his will, without laying himself liable to be stricken from the rolls. (Witness was here stopped by the Court, upon the ground that no predicate had been laid for such testimony.) Witness was then called on by plaintiff to testify what George Scott had testified to in this case, on a former trial, which was objected to by defendant's counsel, and the objection sustained by the Court; but it was then agreed that witness should go on and state what Scott had testified to on the former trial, to-wit: that some time in the Spring, A. D., 1854, said Sneed in company with defendant and his son Joseph, met him in the streets of Austin, and that after some conversation said Sneed remarked to him, Scott, in the presence of said defendant and his son, that he, Sneed, and Oldham were going to defend the old man and his son in that murder case at Lockhart Court; that he, Sneed, and Oldham would be responsible for the forthcoming of the old man and his son. Witness thinks that Scott made no promise that he would not execute the capias.

K. L. Haralson, witness for plaintiff, testified that the usual fee for defending in murder cases ranged in this country from $250 to $1000 ; that the amount of the fee would depend upon the character of the case and the ability of the parties to pay ; that he had understood that William Murphy of Alabama got $20,000 for defending in one case ; that he, witness, would charge more to defend two men indicted jointly, than he would for defending one, but not double the amount ; say 50 per cent. more : that he never took into consideration in a murder case in estimating his fee, the fact that other counsel were employed to assist him.

Gideon Pace, witness for plaintiff, stated that he was at

Arrington v. Sneed.

Lockhart at the Spring Term of the Court in 1854 ; that said Sneed and one A. W. Terrell, partner of Judge Oldham, in the practice of law, came to him in Lockhart and told him that old man Arrington and his son Joseph had been indicted for murder, and that they would like for him, witness, to go and see the old man and tell him to keep out of the way until he could see counsel ; that witness accordingly did return to Travis county and tell said defendant what he had been requested to tell him by said Sneed and said Terrell.

Evidence of Wm. S. Johnson, taken by interrogatories, as follows, to-wit : that he, witness, had a conversation with the defendant in the year 1854, in the town of Austin, in which defendant told witness, that he wanted him to try and put down any prejudice that might exist against said defendant in Caldwell county on account of the killing of Ridley ; that he, defendant could satisfy witness of his justification ; that defendant was giving plaintiff Sneed, and W. S. Oldham one thousand dollars to get him and his son Joseph out of the charge of the murder of Ridley ; that defendant said he thought Sneed was a pretty long-headed old fellow, and would get him and his son out of the scrape.

This Court having decided the case upon the pleadings and evidence of the plaintiffs, a statement of the evidence of the defendant and of other points reserved, is unnecessary. The jury found for plaintiff $279, for which he had judgment ; motion for new trial and in arrest of judgment overruled, &c.

*H. W. Sublett*, for appellant.

*W. S. Oldham*, for appellee.

WHEELER, J. It does not become necessary to examine the many questions presented by the assignment of errors, and in argument, because we are of opinion that, upon the plaintiffs averments and proof, the action cannot be maintained.

The retainer, or employment, was for the professional services of the plaintiff in a case, which was not to be tried until the succeeding Term of the Court. This suit was brought before that period arrived. It is plain that the action could not be maintained for services thereafter to be rendered. The plaintiff therefore sued, first, for a mere retainer, and proceeded by attachment. He afterwards amended, averring that the defendant had discharged him from his employment, and claiming compensation for the services actually rendered. But the alleged discharge was after the bringing of this suit; and we are of the opinion that the bringing of the suit, under the circumstances, and in the manner in which it was brought, was sufficient, without adverting to other matter, to authorize the discharge, and release the plaintiff from the obligation imposed by the retainer, and dissolve the relation of attorney and client between the parties. That is a confidential relation, and implies a mutual trust, confidence and good will, which it is not to be supposed could subsist between these parties, after the bringing of this suit, under the circumstances The question of the sufficiency of the cause to authorize the discharge of the plaintiff, was left by the Court to the jury; but as there was and could be no question about the facts, appearing by the record and the pleadings, we think it was the province of the Court to decide upon its sufficiency in point of law; and that it was legally sufficient.

The defendant having been thus discharged by the plaintiff from the obligation which he had incurred by his having retained him as his counsel, the only remaining ground of action was the services actually rendered. The only services which could legitimately be rendered in such a case, at such a time, were the procuring of bail, if the case was bailable, and the giving of advice respecting the summoning of witnesses, and preparing the defence. Without commenting upon the evidence, it may suffice to say, that the services it discloses were not of a character to constitute a good and valid, or legal considera

tion to support any promise, express or implied. A contract, the consideration of which was such advice to a party as was calculated to enable, if not to induce him, to elude the process of the law, and such advice to the officer, entrusted with the execution of process, as was calculated to induce him to violate his duty, cannot be sustained. There may be matter of explanation which does not appear ; and it will suffice for the disposition of this case, that it does appear that whatever services were rendered were mixed with others, so contrary to public policy, as that the law will not imply a promise to pay for them. As therefore, it manifestly appears that the plaintiff's cause of action is not such as the law will permit a recovery upon, it is unnecessary to remand the case for a new trial. The judgment will therefore be reversed, and the case dismissed.

Reversed and dismissed.