C. S. BOWMAN *et al.* v. W. H. PHILLIPS *et al.*

PROHIBITORY LIQUOR LAW, *Contract to Defend for Violation of, Void.* Where a contract is entered into between certain attorneys at law, and certain other persons engaged in the illegal sale of intoxicating liquors, providing that the attorneys at law shall, for one year, for the monthly compensation of $80, payable on the 1st day of each month, defend all cases brought against such persons for violations of the prohibitory liquor laws, and services are actually performed by the attorneys at law under this contract, and are paid for for the first nine months but not paid for the last three months, *held*, first, that the contract is against public policy, and void; second, that the attorneys at law cannot recover an additional amount for the value of their services actually performed under the contract, although their services may be worth more than the amount which they have already received.

*Error from Harvey District Court.*

THE opinion states the facts. Trial by the court at the May term, 1885, and judgment for the defendants. The plaintiffs, *Bowman* and two others, bring the case to this court.

*C. S. Bowman, Charles Bucher*, and *J. W. Ady*, plaintiffs in error, for themselves.

*Greene & Shaver*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This action was commenced by C. S. Bowman and Charles Bucher, partners as Bowman & Bucher, and J. W. Ady, against W. H. Phillips, James L. Serviss, G. W. Rogers, and George E. Clark, to recover from the defendants the sum of $240, alleged to be due for professional services rendered by the plaintiffs as attorneys and counsellors at law. The case was tried before the court without a jury, and judgment was rendered in favor of the defendants and against the plaintiffs for costs; and the plaintiffs, as plaintiffs in error, bring the case to this court for review.

It appears that on May 5, 1883, a society existed at Newton, Kansas, composed of the defendants and others, known as "The Saloon and Druggists' Protective Association of Newton, Kansas." The members of the association were principally saloon-keepers, and were engaged in selling intoxicating liquors in violation of the prohibitory liquor law; and the principal object of the association was to frustrate the law to the extent of evading all punishment for its violation. The plaintiffs in this case had full knowledge of all these things. On that day the plaintiffs and the defendants, with a few others, entered into the following written contract, to wit:

"NEWTON, KANSAS, May 5, 1883.

"We, the undersigned business men of the city of Newton, agree to pay Messrs. Bowman & Bucher and J. W. Ady the sum of eighty dollars per month, on the 1st day of each month, for the period of one year from May 1, 1883, eighty dollars to be paid on the execution hereof; said payments to be made in consideration of the services herein agreed to be rendered.

"We, the undersigned attorneys at law, agree to defend all cases that may be brought against Geo. E. Clark, Jas. Serviss, W. H. Phillips, J. E. Marti, J. H. Gray, J. H. Pappe, O. S. Bassett, E. Wetzel, and any others who may become members of

The Saloon and Druggists' Protective Association of Newton, Kansas, or any person in business with either of them as clerk, partner or otherwise, for a violation of the prohibitory liquor laws of the state of Kansas, and to accept as full compensation for our services the sums hereinbefore stipulated to be paid. This is not to include the necessary expenses or outlays on our part, should such be necessary, but only fees for professional services. Executed in duplicate.

      BOWMAN & BUCHER.   JAS. L. SERVISS.
      J. W. ADY.      W. H. PHILLIPS.
              J. H. PAPPE.
              J. E. MARTI.
              L. H. CRAFTS.
              GEORGE E. CLARK.
September 1st.          G. W. ROGERS."

Afterward, and within one year thereafter, various criminal prosecutions were instituted and conducted against the several members of the aforesaid "Saloon and Druggists' Protective Association" for violation of the prohibitory liquor law, and the plaintiffs in this action, as attorneys and counselors at law, defended them. Also during that year, and for the services of the plaintiffs for the first nine months thereof, the members of said association paid to the plaintiffs the sum of $720, leaving, as the plaintiffs claim, still due to them on the aforesaid contract and for their services for the last three months of the aforesaid year, the sum of $240, for which sum they brought this action. It is stated in the briefs of counsel that the court below decided this case upon the theory that the aforesaid contract was in violation of public policy, and therefore void; while the plaintiffs claim that the contract is not in violation of public policy, nor void for any other reason; and they further claim that even if the contract is void, still that they alleged enough in their petition and proved enough on the trial to enable them to recover in the action as upon an implied contract for the actual services which they in fact performed. They certainly proved that the services which they actually performed were worth more than $960, which is all that they claim for the entire year's work.

We think the contract is against public policy, and void.

Of course attorneys at law may be employed to defend persons charged with crime, where the alleged offenses are charged to have been committed prior to the employment. An attorney's services may also be engaged for future transactions where no wrong is intended or contemplated; and in all cases good faith and innocence will be presumed until the contrary appears. Also where a contract is not in violation of public policy, nor in any matter tainted with immorality or illegality, and services are performed or benefits conferred under it, but the contract is void because of some want of power in one or both the parties to make it, or void because of some irregularity in its execution, a contract will be implied and a promise assumed that the party benefited shall pay for all benefits which he has actually received under the void contract. Or if no contract is expressly made, but services are nevertheless performed or benefits actually conferred with the knowledge and consent of the other party and not as a gratuity, which services or benefits are in and of themselves innocent and proper, a contract and promise will be implied to pay for all the benefits actually received. But none of these cases is the present case. In the present case it was future wrongs and violations of law that were contemplated when this contract was executed, and it was future wrongs and violations of law that were to furnish the foundation for the plaintiffs' services, and the foundation for their compensation; and except for these contemplated future wrongs and violations of law the contract would never have been made. This contract was tainted at its inception with these future intended and contemplated violations of law. Of course the plaintiffs when they entered into the contract did not intend to perform services different from services which may rightfully and legally be performed under a contract made for similar services after the violations of the law have actually occurred; and the plaintiffs in rendering their services under this contract did not render any services except such as they might have legally and rightfully rendered under a contract made after the violations of the law had actually taken place; but these things

are not the things which render the contract in this case objectionable. The wrong on the part of the plaintiffs consisted simply in entering into a contract to defend persons for criminal offenses which were in contemplation of all the parties to be committed in the future. This was a virtual encouragement of the defendants to violate the law. And surely the defendants expected by future violations of the law to furnish to the plaintiffs a sufficient amount of work to make the plaintiffs earn the agreed compensation. And in all probability the defendants also expected to realize a sufficient amount of profits out of their illegal and interdicted traffic to pay the plaintiffs and have something left. It was evidently considered by the parties as a mere sharing of the profits. The evidence tends to show that the defendants employed the plaintiffs in advance because they believed that by so doing they could better evade the prohibitory liquor law, and could obtain the services of the plaintiffs at a cheaper rate, provided they continued to carry on their illegal traffic. If the plaintiffs had refused to enter into such a contract, possibly the defendants would have closed their illegal business at once. What operated upon the minds of the plaintiffs to enter into this contract in advance of the commission of the contemplated offenses, is not shown, but it is open to the supposition that they may have believed that if they did not enter into this contract the defendants would close their illegal business, or at least would not commit so many violations of law, and thereby would render the plaintiffs' services and their compensation correspondingly lighter. The defendants by this contract agreed to pay the plaintiffs $80 per month, and they did in fact pay them that amount for the first nine months of their employment, and failed to pay them only for the last three months. It must also be remembered that the plaintiffs in this action are attorneys and counselors at law. They belong to a class of persons who are authorized and licensed under the laws of Kansas to assist the courts in the administration of justice and in enforcing the laws. Now is it proper for such persons to say to persons who are contemplating the

commission of crime: "If you commit the crime we will defend you, and are ready now to enter into a contract for that purpose"? Attorneys at law, above all others, should refrain from doing anything which might seem to encourage a violation of the laws. We know of no authorities directly and precisely in point of the questions involved in this case, but we cite the following as giving support to the views herein expressed: *Treat v. Jones,* 28 Conn. 334; *Arrington v. Sneed,* 18 Tex. 135; *Hayes v. Hayes,* 8 La. Ann. 468; 3 Am. and Eng. Encyclopædia of Law, 869, 875, 886, and cases there cited; 7 Wait's Actions and Defenses, ch. 31; Greenhood on Public Policy, parts 11 and 13.

As above stated, we think the contract in question in this case is void for the reason that it contravenes public policy; and we also think that the plaintiffs cannot recover for their services which they actually performed under the contract, and this for the same reason. As between the original parties and all persons *in pari delicto,* the courts will not enforce illegal contracts nor any supposed rights founded upon them, but will leave the parties and those *in pari delicto* just where they find them and leave each in the possession of just what he has already obtained. So much of the contract or its fruits as has already been executed, performed, or vested, the courts will permit to stand, but whatever remains to be executed or performed or to become vested, the courts will not enforce. In the present case the plaintiffs will retain all the money which they have received under the void contract without the defendants having any action to recover it back, and the defendants will retain all the benefits resulting from the services of the plaintiffs which have already been rendered under the void contract, without the plaintiffs having any action to recover for the value of such services. Indeed, except for the contract there might never have been any necessity for the performance of any such services, for without the encouragement given by the contract to the defendants they might never have violated any of the laws of Kansas.

We think the decision of the court below is correct, and its judgment will be affirmed.

All the Justices concurring.