**TEXAS COMMERCE BANK—NEW BRAUNFELS, NATIONAL ASSOCIATION, Appellant,**

v.

**C.N. Clay TOWNSEND, Appellee.**

No. 3–89–122–CV.

Court of Appeals of Texas, Austin.

Feb. 21, 1990.

Rehearing Overruled March 7, 1990.

James W. Paulsen, Houston, for appellant.

John J. Curtis, New Braunfels, for appellee.

Before POWERS, CARROLL and ABOUSSIE, JJ.

POWERS, Justice.

Texas Commerce Bank—New Braunfels, N.A., appeals from a trial-court judgment, given on the jury's verdict, awarding Clay Townsend compensatory and exemplary damages proximately caused by the bank's negligence and wrongful dishonor in refusing to pay a bank check drawn by Townsend. We will reverse the judgment and render judgment that Townsend take nothing.

## THE CONTROVERSY

Townsend, an attorney, maintained in the bank a trust account under the name "C.N. Townsend, Escrow Account." His judgment creditor obtained service of a writ of garnishment on the bank. The writ commanded the bank not to pay any debt it owed Townsend and to make answer under oath, within a specified time, regarding the debt and the other matters specified in Tex.R.Civ.P.Ann. 661 (Supp.1989). Before the day required for such answer, the payee on a bank check written on the trust account by Townsend presented the check for payment. The bank refused to pay it. Afterwards, Townsend's judgment creditor dismissed the garnishment proceeding, and the bank paid the check when it was presented a second time.

Townsend sued the bank for negligence and wrongful dishonor based upon the bank's admitted refusal to pay the check when first presented for payment. The bank defended, and now appeals, on a contention that its refusal was legally justified as a matter of law because the bank's ordinary duty to pay the check had been suspended by service of the writ of garnishment. We agree.

## THE BANK ACCOUNT

We should refer to a basic proposition of law raised by the appeal. We may not speak, as the parties do, of the "funds" in the account being garnished. This is because Townsend did not attempt to carry his burden of showing that the trust account was a "special account" under an agreement between Townsend and the bank that deposits to the account would be kept separate from the bank's other funds. *Reagan v. Elizondo*, 73 S.W.2d 900 (Tex. Civ.App.1934, writ ref'd); *Shaw v. Halbert*, 68 S.W.2d 391 (Tex.Civ.App.1934, writ ref'd). The account was rather a "general account."

Townsend's general account created between him and the bank a relationship of *creditor* and *debtor*. The bank acquired legal title to the sums deposited in the trust account, and these sums lost their separate identity by merging in the bank's general "funds." While the bank acquired legal title to the sums deposited, Townsend acquired a legal right to direct payment from the account, from the bank's general "funds," by means of checks drawn by him against the account. With each deposit to the account, the bank's *debt to* Townsend increased by a corresponding credit to the account. With each check paid by the bank from the account, the bank's debt to Townsend decreased by a corresponding debit against the account. *Grebe v. First State Bank*, 136 Tex. 226, 150 S.W.2d 64 (1941). The effect of the garnishment writ was simply to prohibit the bank's payment of its debt to Townsend.

The very name of the account, "C.N. Townsend, Escrow Account," indicated that others *might* have a right *against Townsend* by reason of his deposits to the account. The bank was not obliged, however, to undertake any inquiry in that regard merely because of the name of the account. Even though third persons might have legal and equitable rights against Townsend as their trustee, the bank had by reason of the bank account a legal relationship *with him alone*. He alone was entitled to draw against the account, and he was legally entitled to do so at his pleasure. The bank was legally bound to honor his checks (until served the writ of garnishment) and incurred no liability to such third persons *provided* the bank did not participate in any misapplication of funds or breach of trust. *Interstate Nat'l Bank v. Claxton*, 97 Tex. 569, 80 S.W. 604, 606 (1904); *Steere v. Stockyards Nat'l Bank*, 113 Tex. 387, 256 S.W. 586, 592 (1923). If a bank *becomes aware* of a possible misappropriation by a trustee, it may, of course, come under a legal duty to protect third persons until their legal and equitable rights against the trustee can be determined in the final judgment of a court. *Dunagan v. Bushey*, 152 Tex. 630, 263 S.W.2d 148, 153 (1953); *Grebe*, 150 S.W.2d at 68; *Silsbee State Bank v. French Market Grocery Co.*, 103 Tex. 629, 132 S.W. 465 (1910); *Nelson v. Richardson*, 299 S.W. 304 (Tex. Civ.App.1927, writ ref'd); *Austin v. Matthews*, 284 S.W. 308 (Tex.Civ.App.1926, writ ref'd). Nothing of the kind is presented in the present case.

In summary, Townsend's bank account did not contain "funds" belonging to persons other than Townsend, mixed perhaps with "funds" that did belong to him. Rather, there existed simply a creditor-debtor relationship between Townsend and the bank, and the writ of garnishment brought this relationship under the control of the issuing court. We shall employ terminology consistent with this view in discussing the bank's duty to pay the check.

## THE BANK'S DUTY TO PAY THE CHECK

"A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item." Tex. Bus. & Com.Code Ann. § 4.402 (1968). As indicated in an accompanying comment, however, " '[w]rongful dishonor' excludes any permitted or justified dishonor," and it is a theory of recovery different from the bank's failure to handle an item with ordinary care, as indicated in another comment under § 4.402. The latter theory of negligence is reflected in § 4.103(e) of the Code. Either theory requires that the law imposed upon the bank a *duty* to pay the check when it was first presented. The

bank could have no duty if the effect of the writ of garnishment suspended the bank's ordinary duty to pay the check drawn on Townsend's trust account. We believe it clearly did.

The command in the writ of garnishment explicitly directed the bank not to pay, until further order of the court, any debt the bank owed Townsend. To have honored the check in question would have amounted to payment *pro tanto* of the debt the bank owed Townsend. Consequently, the bank could not owe Townsend a legal duty to pay the check because service of the writ fixed upon the bank a duty *not* to pay the check. Stated another way, Townsend cannot found an action on a premise that the bank had a duty to disobey the command given in the writ. Public policy would preclude such an action. *Arrington v. Sneed*, 18 Tex. 135 (1856) (attorney cannot recover value of legal services consisting of advice calculated to frustrate execution of court process). We hold as a matter of law that the bank had no duty that might furnish the basis for Townsend's causes of action for wrongful dishonor and negligence.

Townsend erects his argument upon a misleading legal premise: that his trust account contained "funds" belonging to others. The premise might be acceptable in an action between such persons and Townsend; it is not an acceptable premise in the present action for the reasons given previously. Upon his erroneous premise, Townsend then argues from passages found in judicial opinions that state something like the following, found in *Southwest Bank & Trust Co. v. Calmark Asset Management, Inc.*, 694 S.W.2d 199, 200 (Tex.App.1985, writ ref'd n.r.e.):

> Neither trust funds nor the funds of another deposited by a defendant into an account in his own name is subject to garnishment by the defendant's creditors. *Silsbee State Bank v. French Market Grocery Co.*, 103 Tex. 629, 132 S.W. 465 (1910); *Canyon Lake Bank v. Townsend*, 649 S.W.2d 809 (Tex.App.— Austin 1983, writ ref'd n.r.e.); *Belva Oil Co. v. Lowe*, 27 S.W.2d 599, 600 (Tex.Civ. App.—Eastland 1930, no writ). In such instances, the equitable interest of the beneficial owner prevails over the legal title of the defendant.

These statements are not wandering orphans upon which a litigant can fix the parentage of his own case merely because the words appear to suit his purpose. The words do not refer to the permissible scope and effect of a *writ* of garnishment when it is served the garnishee; they refer instead to the permissible scope and effect of any garnishment *judgment,* arrived at under the orderly procedures for adjudication set out in Tex.R.Civ.P.Ann. 673–678 (1967 & Supp.1989). The present case does not involve that matter for the writ of garnishment was dissolved before the garnishment proceeding reached the adjudication stage.

It is undisputed that the bank refused to pay the check drawn by Townsend after service of the writ of garnishment but before it was dissolved. The issue of the bank's duty to honor Townsend's check can be determined solely in reference to the legal effect of the writ while that effect continued. The legal effect of the writ was to bring within the control of the court the debt the bank owed Townsend, evidenced by any credit balance in his account. As the text of the writ stated, the bank was forbidden to pay Townsend "pending further order of this court." *See* Tex.R.Civ.P. Ann. 661 (Supp.1989). The bank would have violated the writ at its peril. *Cohen v. Advance Imports, Inc.*, 597 S.W.2d 449, 452 (Tex.Civ.App.1980, writ ref'd n.r.e.); *Pure Oil Co. v. Walsh–Woldert Motor Co.*, 36 S.W.2d 802, 805 (Tex.Civ.App.1931, writ dism'd). Not only was the bank obliged to obey the legal process that directed it not to pay its debt to Townsend, the bank was legally privileged to withhold payment until after any claims between Townsend and others, by reason of the account, were established in court. *See King v. Porter*, 256 S.W. 627, 629 (Tex.Civ.App.1923, no writ); *Smith v. Briggs*, 168 S.W.2d 528, 531 (Tex. Civ.App.1943, writ ref'd w. o. m.). That the writ was dissolved before adjudication, to permit payment of the check without violating the writ and without risk of liability on the part of the bank, does not enter into the calculation of whether the bank

had a duty to honor the check *when it was first presented.*

We hold, in summary and as a matter of law, as follows: (1) after service of the writ of garnishment, the bank's legal duty to pay from the account according to Townsend's order was suspended, and the bank came under a contrary legal duty not to pay the debt until further order of the court; and (2) consequently, there could exist no legal duty upon which Townsend might found his causes of action for wrongful dishonor and negligence, the bank being legally justified in refusing payment and legally excused from its duty to make payment.

We therefore reverse the judgment below and render judgment that Townsend take nothing.