Opinion issued July 17, 2003













In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00021-CV




WHITNEY NATIONAL BANK, f/k/a BANK OF HOUSTON,
AND WILLIAM P. TRAYLOR, Appellants

V.

EDWIN F. BAKER, ADMINISTRATOR OF THE ESTATE OF WELDON T.
BAKER, DECEASED, Appellee




On Appeal from Probate Court No. Two
Harris County, Texas
Trial Court Cause No. 294186-401




O P I N I O N
           Appellee, Edwin F. Baker, administrator of the estate of Weldon T. Baker (Baker),
deceased, sued appellants, Whitney National Bank, formerly known as Bank of Houston, and
William P. Traylor, the former president of the bank, to recover withdrawals by Zelia Lopes
Rodrigues from two accounts over a four-year period following the death of Baker. The trial
court rendered judgment on the jury verdict in favor of appellee, and the bank and Traylor
appeal. We reverse and render a take-nothing judgment. 
BACKGROUND
           Baker, a United States citizen, lived with his wife and three sons in Brazil, where he
had business interests. In the early 1970s, Baker and his wife separated, and she returned to
the United States with their sons. The Bakers never obtained a divorce, but they lived
separately for the rest of his life. In 1977, Baker and Rodrigues, a native of Brazil, entered
into a contractual relationship, which was formalized by a document that, as translated into
English, was entitled “Term of Good Living” and designated Baker as “The Bridegroom”
and Rodrigues as “The Bride.” Rodrigues was also involved in Baker’s business affairs. The
personal and business relationship between Baker and Rodrigues continued until Baker’s
death in 1993. 
           In 1983, a money market investment account, number 90-0387-8, was opened at the
Bank of Houston in Rodrigues’s name (the ZLR account). Rodrigues’s signature was the
only one that appeared on the signature card. On the reverse side of the signature card, in the
agency clause, Rodrigues signed as principal, and Weldon T. Baker was named as agent. 
The co-depositor clause was left blank. 
           In 1985, a commercial money market account, number 80-0416-1, was opened at the
Bank of Houston with the account title of “Kolovid Establishment,” a legal entity organized
under the laws of Liechtenstein (the Kolovid account). Baker and Rodrigues signed the
signature card on this account. On the reverse side of the card, in the agency clause,
Rodrigues was named as agent, “Kolovid Establishment” was typed above the line for
signature of principal, and Baker’s signature appeared below that line. The co-depositor
clause was left blank. 
           In 1990, new signature cards for the two accounts were sent to the bank. Both cards
showed, as the first signature, “Buster Baker” and, as the second signature, “Kate Buster
Rodrigues.” The account titles were not changed. The co-depositor clauses and the agency
clauses contained a series of “Xs” on the name and signature lines. After Baker died,
Rodrigues continued to make deposits and withdrawals on the two accounts. 
           Baker’s wife and sons did not learn of his death until 1995. After learning of his
father’s death, appellee contacted Traylor and asked whether Baker had any accounts at the
bank. Traylor told him that Baker had not had any accounts at the bank for several years. 
           In 1996, appellee was appointed in Brazil to be administrator of Baker’s estate. In
November 1997, appellee’s attorney notified the bank’s attorney that, “as the legal
representative and duly appointed Administrator of the Estate of Weldon Thomas Baker,”
appellee claimed an interest in the ZLR account or any other account in which Baker was a
record owner, signatory, or party having a right of withdrawal. In December 1997, appellee’s
attorney again wrote the bank’s attorney, stating that appellee had filed an application for
appointment of independent administrator in Harris County and threatening legal action
regarding the ZLR account. 
           On March 31, 1998, the probate judge signed an order appointing appellee
administrator of Baker’s estate and granting him the powers and duties to take possession of
the contents of a safety deposit box at the Credit Suisse Bank in Zurich, Switzerland; to hire
and pay attorneys, accountants, and any additional persons required; and to sue and defend
lawsuits and exercise any rights necessary to protect assets of the decedent. The order noted
that, in related federal litigation, the federal court had entered an order directing that future
distributions for the benefit of the estate be made to the clerk of the registry of the Harris
County Probate Court and not to appellee directly. 
           Appellee sued the bank and Traylor, alleging negligence and gross negligence in
handling the funds of the estate, breach of fiduciary duty, breach of contract by permitting
unauthorized withdrawals from the accounts, and misrepresentation regarding the existence
of the accounts. The case was tried to a jury, which found that (1) on November 12, 1993,
$798,188.23 in the Kolovid account and $102,501.01 in the ZLR account were assets of
Baker; (2) the bank knew these funds were Baker’s assets; (3) Traylor knew these funds were
Baker’s assets; (4) a relationship of trust and confidence did not exist between Baker and
Traylor; (5) after November 12, 1993, the bank charged the Kolovid account with items that
were not authorized by a customer on the account, but did not make such an unauthorized
charge against the ZLR account; (6) the total sum of disbursements of Baker’s funds from
the Kolovid account after November 12, 1993 was $220,718.10; (7) the bank and Traylor
committed fraud against appellee with respect to the Kolovid account or the ZLR account;
(8) $148,029.71 would compensate appellee for damages resulting from the fraud; (9)
appellee discovered or should have discovered the unauthorized withdrawals by October 27,
1998; (10) items paid on the accounts before January 1, 1996 were paid in good faith; and
(11) the evidence was not clear and convincing that harm was sustained to the estate as the
result of the fraudulent conduct of the bank and Traylor. The jury awarded attorney’s fees
of $106,000 through trial, $35,000 for appeal to the court of appeals, and $35,000 for appeal
to the supreme court. 
           On appeal, appellants challenge (1) the denial of their motion for judgment
notwithstanding the verdict on their “statement defense,” (2-3) the award on the breach-of-contract claims relating to the Kolovid account, (4) the award on the breach-of-contract
claims relating to the ZLR account, (5) the award on the fraud claim, (6) the legal and factual
sufficiency of the evidence to support any damages award, (7) the admission and exclusion
of certain exhibits, (8) the award of attorney’s fees, and (9) the calculation of pre- and
postjudgment interest. 
DISCUSSION
1.        The Statement Defense
           In their first issue, appellants contend that they established their statement defense,
which was based on section 4.406 of the Texas Business and Commerce Code, as a matter
of law because “the undisputed evidence established this defense to all of Baker’s claims.” 
We construe appellants’ issue to complain that the trial court erred in denying their motion
for judgment notwithstanding the verdict.


 Appellants had the burden of proof on their
affirmative defense. Young Refining Corp. v. Pennzoil Co., 46 S.W.3d 380, 385 (Tex.
App.—Houston [1st Dist.] 2001, pet. denied). 
           We review the grant or denial of a motion for judgment notwithstanding the verdict
under a legal-sufficiency standard. See Moore v. Bank Midwest, N.A., 39 S.W.3d 395, 400
(Tex. App.—Houston [1st Dist.] 2001, pet. denied). When, as here, an affirmative defense
was not submitted to the jury, we review the record to determine whether the issue was
disputed or whether the defense was conclusively established by the evidence. See T.O.
Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 222-23 (Tex. 1992) (stating, “Only
disputed issues must be submitted to the jury.”). A motion for judgment notwithstanding the
verdict should be granted when the evidence is conclusive and one party is entitled to recover
as a matter of law. Phar-Mor, Inc. v. Chavira, 853 S.W.2d 710, 713 (Tex. App.—Houston
[1st Dist.] 1993, writ denied). 
           Section 4.406 of the Business and Commerce Code provides, in pertinent part, 
(a) A bank that sends or makes available to a customer a statement of
account showing payment of items for the account shall either return or make
available to the customer the items paid or provide information in the
statement of account sufficient to allow the customer reasonably to identify the
items paid. . . .

                      . . . . 
 
(c) If a bank sends or makes available a statement of account or items
pursuant to Subsection (a), the customer must exercise reasonable promptness
in examining the statement or the items . . . . If, based on the statement or
items provided, the customer should reasonably have discovered the
unauthorized payment, the customer must promptly notify the bank of the
relevant facts. 
 
(d) If the bank proves that the customer failed, with respect to an item,
to comply with the duties imposed on the customer by Subsection (c), the
customer is precluded from asserting against the bank:
(1) the customer’s unauthorized signature or any alteration on
the item, if the bank also proves that it suffered a loss by reason of the
failure; and 
(2) the customer’s unauthorized signature or alteration by the
same wrongdoer on any other item paid in good faith by the bank if the
payment was made before the bank received notice from the customer
of the unauthorized signature or alteration and after the customer had
been afforded a reasonable period of time, not exceeding 30 days, in
which to examine the item or statement of account and notify the bank. 

                      . . . .
 
(f) Without regard to care or lack of care of either the customer or the
bank, a customer who does not within one year after the statement or items are
made available to the customer (Subsection (a)) discover and report the
customer’s unauthorized signature on or any alteration on the item is precluded
from asserting against the bank the unauthorized signature or alteration. . . . 

Tex. Bus. & Com. Code Ann. § 4.406 (Vernon 2002). 

           Appellee did not dispute appellants’ testimony that the bank sent regular, monthly
statements for both accounts to Rodrigues. Rather, appellee argued that Baker was the
customer and that, after Baker’s death, the statements for the accounts should have been sent
to Baker’s representative. 
           The signature card for a bank account is a type of contract. Allen v. Wachtendorf, 962
S.W.2d 279, 282 (Tex. App.—Corpus Christi 1998, pet. denied). The name on an account
is prima facie proof of ownership of the account. See Tex. Commerce Bank–New Braunfels,
Nat’l Assoc. v. Townsend, 786 S.W.2d 53, 54 (Tex. App.—Austin 1990, writ denied)
(determining that, because of name of account, bank had legal relationship only with
depositor). A bank is not required to inquire into the ownership of the funds deposited. Id. 
A bank is entitled to rely on its deposit agreement when determining to whom it is indebted. 
Bank One, Tex., N.A. v. Sunbelt Sav., F.S.B., 824 S.W.2d 557, 557 (Tex. 1992). 
           In Bank One, Sunbelt Savings obtained a judgment against James Bramlett, who was
sole shareholder, officer, and employee of Bramcon General Contractors. Bank One, 824
S.W.2d at 557. Sunbelt Savings knew that Bramlett, who did not have a personal account
at the bank, commingled personal funds in Bramcon accounts. Id. at 557-58. Sunbelt
Savings obtained a writ of garnishment against Bank One, naming Bramlett as the judgment
debtor. Id. at 558. Bank One responded that it was not indebted to Bramlett. Id. After this
response, the Bramcon funds were withdrawn from Bank One. Id. The trial court granted
summary judgment in favor of Bank One on the ground that Bank One was not indebted to
Bramlett. Id. The court of appeals reversed, and the supreme court reversed the court of
appeals and rendered judgment for Bank One. Id. The supreme court concluded that, unless
a deposit agreement created a debtor-creditor relationship between the bank and the judgment
debtor, the bank was not indebted to the judgment debtor. Id. The court further stated:
When a creditor wants to challenge title to funds held by a third party,
the creditor should seek a writ of garnishment naming the nominal owner not
the true owner. The court is then responsible for determining true ownership. 
Requiring a garnishee bank to determine true ownership of its deposits
improperly shifts a judicial responsibility to the garnishee.

Id. 

           We consider the logic of Bank One to apply to the present case. The signature cards
for the accounts were the only written evidence of the contract between the bank and the
customer. The signature cards listed the name on one account as “Zelia Lopes Rodrigues”
and on the other account as “Kolovid Establishment”; therefore, absent some evidence that
the accounts were owned by another, they were the accounts of Rodrigues and Kolovid. The
fact that Baker conducted the transactions in the Kolovid account did not establish that the
account was his personal account. In addition, any commingling of Baker’s funds in the two
accounts did not make them Baker’s accounts. 
           A corporation or other legal entity can conduct business only through natural persons. 
See Household Credit Servs., Inc. v. Driscol, 989 S.W.2d 72, 82-83 (Tex. App.—El Paso
1998, pet. denied). In the case of the Kolovid account, Baker and Rodrigues were the natural
persons authorized by the signature cards to act on behalf of Kolovid Establishment. Baker’s
death did not alter Rodrigues’s authority to act for Kolovid. The second signature card
showing fictitious first names for Baker and Rodrigues did not require the bank to refuse to
honor the true signature of Rodrigues, particularly in light of Traylor’s testimony that he
understood Kate Buster Rodrigues to be Zelia Lopes Rodrigues. 
           In the case of the ZLR account, Baker was listed as an agent on the account. His
death did not affect Rodrigues’s ownership of the account.
           Here, the jury was asked to determine the amounts of money in each account that were
assets of Weldon T. Baker on November 12, 1993. The jury’s finding that the funds
remaining in both accounts on November 12, 1993 were the assets of Baker was not
equivalent to a finding that Baker was the customer on those accounts. 
           When the bank continued to send statements to Rodrigues after Baker’s death, the
bank was in compliance with section 4.406. Appellants established their statement defense,
as a matter of law, to appellee’s breach-of-contract claims.
           We sustain appellants’ first issue.


 
Fraud
           In their fifth issue, appellants contend that the trial court erred in rendering judgment
on appellee’s fraud claim because the evidence was legally and factually insufficient to
support the elements of the claim, the instructions to the jury on the claim were incorrect, and
there was no evidence to support any amount of damages on the claim. Appellants argue that
appellee did not have standing to obtain information about the accounts and that appellants
did not have a duty to inform appellee about any accounts on which Baker had an interest
because, at the time of appellee’s inquiries, he was not the administrator of the estate in
Texas. Appellants also contend that Traylor’s representation to appellee that Baker had not
had any accounts at the bank in years was true because the accounts in question were the
accounts of Kolovid and Rodrigues. Finally, appellants argue that there was no evidence to
support the element of reliance in a fraud claim because appellee testified that Baker had told
appellee about the Kolovid account in a telephone conversation. 
           Appellee contends that the fraud claim was based upon Traylor’s affirmative
misrepresentations, not his failure to disclose the accounts. Appellee argues that Traylor told
him in October 1995 that Baker had not had accounts at the bank for several years and again
in October 1996 that “there was nothing.” As evidence of his reliance on these
representations, appellee testified that he “would have opened probate in Houston if I had a
good reason to do it.” 
           Appellee does not direct us to any evidence that Baker had bank accounts at the bank
for several years before Baker’s death. Therefore, Traylor’s statements to appellee cannot
be the basis for a fraud finding. Furthermore, appellee, by his own admission, had
knowledge of the Kolovid account and thus could not have relied on Traylor’s statements in
deciding whether to open probate in Houston. 
           At trial, appellee argued that a bank memorandum written on December 4, 1996
regarding the Kolovid and ZLR accounts was evidence of the bank’s fraud. That
memorandum stated, “At Mr. Traylor’s request, please do not give out any information
whatsoever regarding the above referenced accounts. If there is an inquiry, do not even let
it be known that their [sic] is an account under the above referenced names and notify Mr.
Traylor immediately.” We conclude that the bank’s memorandum is not evidence of any
affirmative representation by the bank to appellee and, therefore, cannot support his fraud
claim. 
           We sustain appellants’ fifth issue. 
CONCLUSION
           In light of our ruling on appellant’s first and fifth issues, we need not consider
appellants’ remaining issues. We also need not address appellee’s cross-points requesting
full recovery on his breach-of-contract claims. We reverse the judgment of the trial court and
render judgment that appellee take nothing by his claims against appellants. 
 

                                                                  Sam Nuchia
                                                                  Justice

Panel consists of Chief Justice Radack and Justices Nuchia and Hanks.